# CHARLESTON.

STATE ex rel. R. MOORE DODRELL v. W. B. PAYNE et al., BALLOT COMMISSIONERS.

Submitted October 21, 1920. Decided October 21, 1920. Opinion Filed October 26, 1920.

1. COUNTIES—*Vacancy in Office of County Commissioner Filled by Appointment Until General Election.*

When for any cause a vacancy occurs in the office of county commissioner, such vacancy should be filled by the county

court of the county by appointment until the next ensuing general election, and for the unexpired term by the qualified electors voting at such election.. (p. 309).

2. SAME—*Removal of County Commissioner from County Ipso Facto Creates a Vacancy.*

The removal of a county commissioner from the county in which he resided when elected to serve in that capacity *ipso facto* creates a vacancy therein, whether he does or does not formally tender his resignation, or whether the county court does or does not accept such resignation, if he does tender it. (p. 309).

3. ELECTIONS—*Method of Filling Vacancy in Office of County Commissioner After Primary Election Stated.*

If for any cause a vacancy occurs in the office of county commissioner, whether more or less than twenty days after the primary election, the county executive committee of a political party of the county lawfully may thereafter nominate a candidate for such office to be voted for by the qualified electors in the next ensuing general election, and certify his name as such candidate to the clerk of the circuit court of the county, by statute made a member of the county board of ballot commissioners, whose name the board shall place upon the ballots to be used by the electors at such general election. (p. 310).

4. SAME—*County Executive Committee of Party May Fill Any Vacancy in Nomination.*

Section 26a(20), chapter 3, Code 1918, as amended by chapter 78, Acts 1919, confers upon the county executive committee of a political party in the county authority to fill a vacancy in the nomination of a candidate to be voted for at the next ensuing general election, however or for what cause the vacancy may have occurred, provided only, that if the nomination could have been made, but was not made, at the primary election, the committee must fill the vacancy within twenty days thereafter. (p. 310).

5. SAME—*Power of County Executive Committee to Fill Vacancy in Nomination at Primary.*

But this section, as amended, does not so limit the exercise of the right by such committee when the vacancy did not exist until after the expiration of the twenty day period, and hence could not have been filled at the primary. (p. 310).

6. SAME—*Effect of Failure of County Court to Give Notice of Election to Fill Vacancy in its Membership Not Determined.*

Though section 8, chapter 4, Code 1918, requires a county

87 W. Va.

court to give notice of an election to fill a vacancy in its mem-
bership, by publication in one or more newspapers printed in
the county, if there be any so printed, or "in such other man-
ner as will give full notice of said election," the effect of the
failure to do so cannot now finally be determined, because the
time intervening between the dates of the writ and the elec-
tion may be sufficient for that purpose.   (p. 311).

(WILLIAMS, PRESIDENT, absent).

Mandamus by the State, on the relation of R. Moore Dod-
rell, against W. Burbridge Payne and others, Ballot Commis-
sioners, etc.

*Writ refused.*

*G. W. Howard,* and *Jno. R. Pendleton,* for relators.
*G. L. Counts* and *Litz & Harman,* for respondents.

LYNCH, JUDGE:

At the general election held in November, 1916, to choose
national, state, county and district officers, H. N. Eavenson
was elected one of the three commissioners of the county
court of McDowell County for a term of six years beginning
January 1, 1917, and duly qualified to discharge and did dis-
charge the duties of the office until in September of the year
1920, when, because of his intended, if not actual, removal
from this state and the establishment of a permanent resi-
dence in the state of Pennsylvania, he formally tendered to
the county court his resignation in writing as the incumbent
of such office.  As the other two members were unable to
agree with regard to the acceptance of the resignation, and
so far as appears did not declare the office vacant or attempt
to choose a successor to fill the vacancy, as if declared, until
the next general election, pursuant to section 9, ch. 4, Code
1918, the McDowell County Republican Executive Committee,
after due notice, convened at Gary in McDowell County a Re-
publican mass convention October 9, 1920, to nominate a can-
didate for election as Eavenson's successor for the unexpired
term, and as such candidate the convention nominated H. T.
Graham, and its chairman and secretary certified his nomina-
tion and filed the certificate in the office of the clerk of the cir-

cuit court of McDowell County. The result of the action taken by the convention received the endorsement and ratification of the Republican county executive committee, through McGinnis Hatfield, its chairman, who, by a motion regularly adopted at the meeting of the committee which called the mass convention, was expressly authorized and empowered to ratify and confirm the action of the convention. The board of ballot commissioners for the county have placed Graham's name as such candidate on the ballots to be voted for at the election to be held in the county and elsewhere November 2, 1920. To procure a mandatory and peremptory order addressed to the members of the board of ballot commissioners requiring them to remove the name of Graham from such ballots and to print them without his name thereon is the purpose of the petition filed by R. Moore Dodrell, a resident and taxpayer of the county.

Briefly stated the grounds of the relief are these: (1) The unaccepted resignation of Eavenson does not operate to create a vacancy in the office of county commissioner, wherefore there is no vacancy in the office to be filled at the ensuing election: (2) the Republican executive committee had no right, power or authority to call a mass convention to nominate a candidate for such office, and the convention when held had no right, power or authority to nominate such candidate, wherefore, petitioner says, the nomination of Graham and the certification thereof to the circuit court clerk of the county and the action of the ballot commissioners in placing Graham's name on the ballots to be voted in November "are all wholly illegal, null and void;" and (3) "that no notice of an election to fill the unexpired term of Evanson as commissioner of the county court of McDowell County has been published, or ordered to be published, by the county court" of that county, "as required by law."

There is, it seems, some disagreement among the authorities as to the effect to be given to the mere tender of a resignation of a public officer to the authority designated by law to accept or refuse it. The county court in this instance is such authority. Not only is it the proper tribunal to receive

and act upon the resignation of one of its members, but it is its duty to fill the vacancy so caused by appointment of a successor until the next ensuing general election held in the county. Section 9, ch. 4, Code 1918. But whether it has acted or has failed or refused to act in either respect is wholly immaterial so far as concerns the creation of a vacancy, as it is conceded that Eavenson has abandoned his former residence in the county and his citizenship in the state and established both in Pennsylvania. For section 3, ch. 7, Code 1918, says: "Every county and district officer, except the prosecuting attorney, shall, during his continuance in office, reside in the county or district for which he was elected. And the removal of any such officer from the state, circuit, county or district for which he was elected, shall vacate his office." The statute itself created the vacancy immediately upon Eavenson's intentional and permanent departure from McDowell County and from this state for residential and business purposes in a foreign jurisdiction.

Section 9, ch. 4, Code 1918, in addition to the requirement for filling vacancies in county and district offices until the next general election, specifically and imperatively provides for the filling of such vacancy for the unexpired term at such election by a vote of the people. Thus there is committed to the county court an express mandate of the Legislature, based upon necessity for the prompt, efficient and orderly administration of the business affairs of each county. It is an administrative tribunal and the Legislature manifestly did not intend to permit a vacancy in its membership to affect or impair the efficiency of that important and necessary tribunal. When composed of two members only it is not difficult to understand to what extent matters of grave concern to the people of the county may be embarrassed by nonconcurrence or disagreement of its members. To avoid the opportunity to create such an unfortunate situation was the express desire of the legislative department of the state government, and they have done all they could to provide against it. It was therefore the duty of political parties to do whatever was essential to promote the end intended for these enactments. Whether the Re-

publican and Democratic.parties joined in this commendable effort, certainly one of them did undertake to present to the voters of the county a candidate for the office of county commissioner to fill the vacancy caused by Eavenson's voluntary removal of his residence from the county. and state.

· As Eavenson vacated the office in September, 1920, candidates to be chosen to fill the vacancy thus created could not have been nominated in the primary election held in the preceding month of May. Such a nomination was impossible at that time or within twenty days thereafter. Must it be held, as relator contends; that after that date no nomination can be made of a candidate for an office that, according to the statute cited, shall be filled for the unexpired term at the next ensuing general election, because, as he says, there is no provision of law authorizing such a nomination except at the May primary or within twenty days thereafter? To sustain the proposition so assumed by him relator cites section 20, ch. 78, Acts 1919, amending section 26a(20), chapter 3, Code 1918. As so amended the section reads: "If any vacancy occurs in the nominee (nomination) of any party after the holding of any primary election, caused by reason of said party failure to make any such nomination in said primary election, or for any other cause, the same shall be filled by the executive committee of that party in the municipality, · county, district or state, as the case may be; provided, if the vacancy occurs by reason of a failure to make such nominations in said primary election, the same shall be made by the executive committee within twenty days after said primary election."

Exclusive of its provisional limitation, this statute in express terms confers upon the executive committee of a political party having the required control authority to fill the vacancy occurring from any cause after the primary or nominating election is held. There is no ambiguity in its language. It is clear and explicit and needs no interpretation. It matters not when or how or from what cause the vacancy occurs. The proper committee may fill it, and, according to the provisions of section 29, chapter 3, Code 1918, it may do so either before or after the ballots are printed and distributed. If afterward, "pasters" may be used as therein authorized. Obviously the

only effect and purpose of the limitation upon the right to exercise the authority so conferred is that, if the vacancy results from the failure to nominate at the primary election a candidate to be voted for at the next general election, when the nomination might and could have been made, the committee must act within the prescribed period of time. It cannot do so afterwards. The Legislature has not otherwise restricted, and plainly did not intend so to restrict, the right to exercise the general power conferred by statute. It has not said and has not manifested an intention to say, either expressly or impliedly, but quite the contrary, that if the vacancy occurs at a time when a nomination of a candidate to fill the same could not possibly have been made in the primary election, such committee cannot act at all in the premises. Manifestly the limitation provision does not warrant the construction or interpretation so urged by relator. Apparently it intends to expedite action only when a nomination could and should have been made, but for some cause was not made, in a primary election held for the nomination of candidates to be voted for at a subsequent general election. If, as we have decided, there was a vacancy in the office of county commissioner of McDowell County, section 9, ch. 4, Code 1918, required the election in November of some person having the necessary qualification to act in that capacity, and the only purpose of naming Graham was to submit his name to the voters of the county for the approval of his candidacy. Otherwise the office necessarily would remain vacant until the 1922 general election in disregard of the provisions to the contrary. Such a condition assuredly was not contemplated by the Legislature. On the contrary, there is, as we have said, ample authority to do what the committee did in the premises. The statute not only does not prohibit the action taken, but expressly authorizes it.

Objection is raised, however, that the nomination was made by mass convention and not by the county executive committee as required by law, even if it was within the province of the committee to do so. Clearly this is untenable since the committee, by formal action taken when calling the convention, authorized and empowered its chairman to ratify and confirm the action of the convention, thus making the candidate so se-

lected its own choice. In other words, what the voters so assembled did was to advise the committee of their preference among those having the proper and necessary qualifications to fill the office.

The last proposition relates to the want of notice by the county court regarding the election of a commissioner to succeed Eavenson. The statute, it is true, does provide for notice in such case. Section 9, ch. 4, Code 1918. It does not, however, prescribe the manner of giving the notice or the time and duration thereof, except that it be by publication "in one or more newspapers printed in the county, if there be any such newspapers printed therein, or in such other manner as will give full notice of said election." Nor does it apply to the nomination of a candidate to fill such vacancy, but only to the election at which the successor is chosen. Time sufficient yet remains to give such notice. But if not given, all the qualified electors know of the general election to be held next month and are presumed to know the requirement for an election to fill the vacancy in the office of county commissioner. Should the notice not be given, the failure would not necessarily render the election of a candidate for such office invalid. *Griffith* v. *County Court,* 80 W. Va. 410, 417 et seq.; 20 C. J. 98, and cases cited in note 46. As also bearing upon the question see *Hood* v. *City of Wheeling,* 85 W. Va. 578, 102 S. E. 259, 264-5. But this issue is left open for the reason the notice may yet be given.

Our conclusion therefore is to refuse the writ.

*Writ refused.*