STATE *ex rel.* D. J. SAVAGE *et al. v.* GROVER C. ROBERTSON, *Chairman, etc., et al.*

(No. 9403)

Submitted September 16, 1942. Decided September 24, 1942.

668

Fox, President, dissenting.

*Haymond Maxwell* and *John J. D. Preston,* for relators.
*Harry R. Angel, Joseph Thomas, Hillis Townsend* and
*T. C. Townsend,* for respondents.

Riley, Judge:

By this original proceeding in mandamus relators challenge the legality of the nomination of Herman L. Bennett as the Democratic nominee for Judge of the Intermediate Court of Kanawha County.

Grover C. Robertson, chairman of the Kanawha County Democratic Executive Committee and one of the respondents herein, issued a call for the holding of mass conventions on August 12, 1942, in the ten magisterial districts of Kanawha County to elect delegates to the Kanawha County Democratic Judicial Convention to be held at two p. m. on August 15, 1942. The purpose of such judicial convention was to select a nominee for Judge of the Intermediate Court of Kanawha County. The two contenders for such nomination were D. J. Savage, the present judge of said court, and Herman L. Bennett. At the mass convention for Charleston Magisterial District held at the

Charleston High School on August 12, pursuant to the aforementioned call, two groups of delegates, each consisting of forty-two persons, were selected, one group being instructed to cast its vote for Bennett, and the other for Savage. A partial hearing on the question of which group was the duly selected one to participate in the County Judicial Convention was held at ten o'clock on the morning of August 15, and resulted in the Kanawha County Democratic Executive Committee's certification of the Bennett delegates. The aggregate number of delegates to be selected for attendance at the judicial convention was one hundred thirteen, and the convention held in the afternoon of the same day cast ninety votes for Bennett and seven votes for Savage. The officers of that convention have certified Bennett's name to M. H. Hix, Clerk of the Circuit Court of Kanawha County as the Democratic nominee for Judge of the Intermediate Court, and, as such, entitled to have his name printed upon the official ballot to be voted at the general election.

The relators in this proceeding are Savage, who, in addition to being the incumbent judge of said court, is likewise a candidate for renomination for that office; the individuals selected on August 12 as those delegates favoring Savage's nomination, and Ben B. Brown and Frank R. Lyon, chairman and secretary, respectively, of what relators describe as the Charleston Magisterial District Democratic Judicial Convention. The respondents include Grover C. Robertson, Luther Carson, vice chairman of the Kanawha County Democratic Committee and chairman of what relators describe as the "purported" Kanawha County Democratic Judicial Convention; John E. Howell, secretary of said purported convention; Clara Boyd and Mrs. Frank Crutchfield, secretary and associate chairman, respectively, of said committee; M. H. Hix, Clerk of the Circuit Court of Kanawha County; the individuals who constitute the Kanawha County Democratic Executive Committee, and Herman L. Bennett, as a member of said executive committee, and also as "the purported nominee of the alleged convention of August 15, 1942."

Relators seek to compel the recall and cancellation of the certification of Bennett's nomination for Judge of the Intermediate Court; the recall and cancellation of "the purported resolution of the purported Charleston Magisterial Mass Convention purporting to instruct the delegates" to cast the votes of that district for Bennett, as well as the cancellation of certificates of all kinds and character received by respondents Robertson and Boyd, as chairman and secretary, respectively, of said committee from any "purported chairman of a purported Charleston Magisterial District Mass Convention other than were made and certified to them by" relators Ben B. Brown and Frank R. Lyon, as "chairman and secretary of the Charleston Magisterial Mass Convention"; the calling by the members of said committee of "a county convention" for the purpose of nominating a candidate for the office of judge of said court; the certification by respondent Robertson as chairman of the committee to "the reconvened or newly-called County Convention" of a list of the delegates and alternates from Charleston Magisterial District certified to him by said Brown and Lyon as the true list of delegates selected at the district conventions held on August 12, together with a resolution "instructing the delegates to cast their votes for" relator Savage, and the certification to such "reconvened and newly-called County Convention" of a list of the delegates and alternates from Union, Jefferson and Malden Districts as certified to him by the chairman and secretaries of said district conventions, respectively, together with the resolutions adopted at said conventions instructing the delegates selected to vote at the county convention for the nomination of relator Savage.

The cause was submitted upon relators' petition and exhibits filed therewith, including a transcript of the evidence taken by the Kanawha County Democratic Executive Committee in hearing of the contest on August 15, the motion of respondents to discharge the rule issued by this Court and to dismiss the petition, the joint answer of respondents to said rule, affidavits in support of respondents' answer, and replication to said answer.

The factual controversy concerns what took place at the Charleston High School auditorium on August 12. The allegations of both the petition and answer, as well as the denials contained in the latter, are lengthy.

Relators have elected to support their petition by the testimony taken on August 15 at the hearing before the executive committee which involved the matter of contest between the Bennett and Savage groups of delegates. Likewise respondents rely upon the record of the proceedings had at the hearing before the executive committee. In their answer they allege that the meeting was held at the time and place and for the purpose of hearing contests over the selections of delegates to the Kanawha County Democratic Judicial Convention, that counsel for the persons claimed to have been selected as delegates and alternates and instructed to vote for Bennett appeared at said meeting, protested the acceptance of the claimed Savage delegates and urged that the list of delegates instructed for Bennett be certified to the judicial convention. They allege further that "the contest respecting the delegates chosen at the Charleston Magisterial Convention was fairly held and impartially determined by the executive committee and deny that Relators' effort to have a fair hearing and determination of said contest before the said committee failed," "but on the contrary, the Respondents allege that the hearing of said contest by said committee on August 15, 1942, was in all respects fair and impartial to said Relators."

The fact, as the answer alleges, that some members of the executive committee may have had personal knowledge of the happenings at the Charleston mass convention is of no importance in the decision of this case. Code, 3-4-27, provides, among other things, that all contests over the selection of delegates shall be heard and determined by the party executive committee of the county from which the delegates are chosen and "the circuit court of the county and the supreme court of appeals of the State shall have concurrent original jurisdiction to *review* by mandamus or other proper proceeding the decision of a

county executive committee in any contest." (Emphasis supplied.) We think this section of the Code provides for a hearing which necessarily involves the taking of testimony; and the review contemplated by this section of the Code is a review of the evidence introduced before the committee at the hearing on the selection of delegates, and not a review of any personal knowledge which may reside within the minds of the committee members, which, of course, would be impossible. It seems to us that, on a review under Section 27, any contesting party is entitled to have either the circuit court of the county or this Court review the decision of the executive committee, and on such review the court should consider only the evidence upon which the executive committee has based its ruling. We think, therefore, under the state of the instant record that a detail of the allegations of the petition and answer is not essential to the determination of this case.

The testimony taken before the executive committee will be hereinafter detailed.

It suffices to detail now that it is admitted by both groups of litigants the dominant tone of behavior at the mass convention was one of turmoil and pandemonium. Each admits it and each charges the other with responsibility therefor. Relators charge some of the respondents with a conspiracy so to conduct the mass magisterial conventions as to recognize and permit participation in the proceedings thereof only of such persons as were committed to Bennett, and to manipulate such conventions without permitting the members thereof to vote upon motions, resolutions, or the selection of delegates; and respondents in their joint answer counter with the charge that many of those who supported the Savage candidacy, realizing they were in the minority, attended the Charleston mass convention with the preconceived plan and conspiracy to conduct themselves so that it would be impossible for the convention to proceed in an orderly manner. Each group asserts that its claimed delegates were duly selected.

What then does the testimony taken before the execu-

tive committee on August 15, concerning the happenings at the Charleston mass convention, show?

On behalf of relators there is the testimony of Ben B. Brown and R. G. Kelly, both practicing attorneys in the City of Charleston and both of whom were seated in the front row of the auditorium. According to their testimony, Carl Carey, as temporary chairman, opened the convention, and a temporary secretary read the call therefor. A motion was then made from the floor and seconded that the temporary organization be made permanent. Their version is that at that point Robertson was called to the chair and placed the motion before the assembly, whereupon J. Hornor Davis, a supporter of Savage, standing in the pit in front of the speaker's stand, called for a division, repeated his call and stepped up on the stairs leading to the platform, continuing his demand for a division; that adherents of Savage made repeated efforts to obtain recognition from the chair without success; and the testimony of these two witnesses is to the effect that there was no division, no tellers and no counting of the votes. Kelly testifies that the entire convention lasted but for eight or twelve minutes. In response to the question whether, after Robertson placed the motion to make the temporary organization permanent, there was any other motion made, any resolution offered, any vote announced, any adjournment announced, or any other announcement from the chair, Brown stated there was nothing but the call by the Savage supporters for a division. Kelly testified that after the lapse of eight or twelve minutes, Carey purported to adjourn the convention and left the platform, after which the witness inquired from some of Carey's adherents what had happened and was told that a list of delegates had been selected and instructed for Bennett, which was the first knowledge the witness testified he had "that any such thing had been done."

Carey's testimony is at variance with that of Kelly and Brown as to when the turmoil occurred and as to whether a vote on the question of a division was granted. According to him a motion that the temporary organization be made permanent was made, seconded and put, and the

preponderance of the yeas in support thereof so obvious that there could be no question in the mind of any fair person that the motion had carried. Carey further said that Miss Neva Frist then moved that the chair appoint a nominating committee of five to select delegates for the convention, and that after the motion had been seconded, pandemonium broke loose. In part, however, he corroborates both Brown and Kelly in that he testified that he called for a division but was unable to obtain one, and that at no time were tellers appointed or any votes actually counted. His testimony further reads: "I immediately recognized that there was a deliberate, vicious, malicious attempt to forbid the majority from expressing their will, and as Chairman of that convention, and as my duty as a citizen, I determined that it should not occur. People rushed to the platform. One man tore my papers up and threw them on the floor. Another grabbed at my feet and tried to pull my feet out from under me, and while I was trying to get him loose from my feet somebody hit me across the shoulder, with what I don't know and who did it I don't know. I could see it was planned, and I determined it should not occur. People were yelling, sticking their fingers in my eyes, almost knocking my glasses off, and I felt that I was not called upon to recognize a maniac or any group of maniacs. Every motion that was put was in order, even on one occasion when a division was called for I tried to get a division, but because of the crowded condition of the hall you could get no one to move, the supporters of either side; so I asked for a standing vote, and the standing vote was overwhelming, even people on my left or on the right-hand side of the auditorium stood."

The testimony of Brown and Kelly likewise detailed what is termed in relators' petition as "the second phase of the convention" when, following the time when the Bennett supporters left the convention hall, those remaining in the auditorium were called to order, Ben B. Brown and Frank Lyon were selected as permanent chairman and secretary, respectively, and a group of delegates

selected and instructed to cast the delegation vote for Savage at the judicial convention to be held on August 15. They assert that this was done by more than a majority of those attending the convention in the first instance and attempt to substantiate this assertion by testimony that the seats in the auditorium were counted and that more than one-half of the seats therein were filled during the styled "second phase of the convention."

The executive committee, after hearing the testimony detailed above, certified the Bennett delegates (forty-two in number), and relators contend its action in so doing is arbitrary and capricious. Remembering that this is a mandamus proceeding, may this Court interfere with the conclusions of the executive committee and, if so, what is the scope of the judicial inquiry? In *Marquis* v. *Thompson*, 109 W. Va. 504, 155 S. E. 462, this Court recognized that mandamus in election cases operated as a certiorari, thus providing a summary review of actions of election officers by legislative enactment. We are fully cognizant of the rule, frequently relied upon in the past, that "in the absence of statute, courts do not exercise jurisdiction to interfere or control, in matters purely political, pertaining to the management and proceedings of a political party." *Boggess* v. *Buxton, Clerk*, 67 W. Va. 679, 69 S. E. 367, 21 Ann. Cas. 289; *State ex rel. Smith* v. *Kanawha County Court*, 78 W. Va. 168, 88 S. E. 663, 20 A. L. R. 1030; *State ex rel. Downey* v. *Emmert*, 102 W. Va. 192, 135 S. E. 11. The legislature has supplied by its enactment (Code, 3-4-27) the judicial power and the correlative duty to review the action of the executive committee. By legislative fiat, the party executive committee is given authority to hear and decide the question of contests concerning delegates to judicial conventions. Resort to that body is prerequisite to any inquiry by the courts in any proceeding involving a contest between two or more groups of delegates, each claiming to be the legal group (see *State ex rel. Croy* v. *Bluefield Water Works & Imp. Co.*, 86 W. Va. 260, 103 S. E. 340); but where the procedure provided by the legislature has been followed and one group, claiming to

be aggrieved by the executive committee's action, initiates a mandamus proceeding which seeks to compel committee action in opposition to its findings, the preliminary and primal inquiry must necessarily be an evaluation of the committee's conclusions under the authority of Code, 3-4-27, to review upon the record made before the committee. Moreover, because the mass convention at which the Bennett delegates were claimed to have been selected was regularly called to order and, as Carey testified, the temporary organization made permanent, this Court is confronted with the certification of the Bennett delegates by the permanent officers of that convention, and the question of the seating of the claimed Savage delegates must await the determination, upon a review, of the correctness of the executive committee's ruling in regard to the Bennett delegates. We therefore proceed to appraise judicially the conclusion of the county executive committee in its certification of the Bennett delegates.

This Court has, in its previous pronouncements, indicated its inclination to sustain the action taken by political conventions. It has stated that "a convention is, when assembled and organized, the depositary of all party power and so continues until it adjourns." *State ex rel. Downey* v. *Emmert, supra.* The case cited likewise recognized that a convention must speak through its chairman. While recognizing that a convention must speak through its chairman, it requires that the chair must give expression to the assent of the majority of those assembled with an opportunity for formal objection to any announcement by the chair. There is variance of opinion, as the testimony shows, as to when the turmoil and confusion occurred at the convention, but we do not deem this conflict pertinent. Of great importance is the fact that there was pandemonium, and, giving full credence to the testimony of Carey, chairman of the convention, that the discord did not occur until the motion was made for the selection of a nominating committee, we must scrutinize the testimony to determine whether there was, in fact, a selection of delegates instructed to vote for Bennett by a majority of

those in attendance at the convention at that time. The testimony of Carey that every motion that was put was in order must be tested in the light of the confusion, discord, and turmoil which admittedly occurred. We may not lose sight of the fact that there were in the auditorium at that time more than two thousand persons. Carey himself says that there was no counting made. He substitutes therefor his conclusion that it was "so obvious to any fair minded person that the majority was so tremendous it wasn't necessary." It is difficult to believe that with the confusion prevalent there could have been any standing vote. The admissions of Carey himself can lead to only one conclusion, and that is that the selection of delegates certified by the officers of the mass convention could not bespeak the sentiment of the convention because it had not had an opportunity to express itself.

We are aware that confusion is not an unusual atmosphere at political conventions, nor is this condition peculiar to political conventions. It is attendant wherever large masses of people assemble, and particularly where those in attendance hold strongly divergent views. Those who went to the Charleston High School auditorium on August 12 sought to express themselves on an issue which the law contemplates shall be determined by those of the electorate who avail themselves of the opportunity of expression. Wherever that opportunity has not been accorded, this Court will not say that the certificate of the convention's chairman reflects the will of those so assembled, for by doing so it would then lend its approval to a session totally void of orderly procedure as a pattern to be followed by those who, in future conventions, might desire that the will of the electorate be subordinated to their own selfish interests and wishes.

This Court is not concerned with the acrimony shown by this record which may exist between the contending factions. This Court does not seek to control interparty affairs, when regularly conducted, nor the political destiny of contenders for party nominations. We simply say that it is our duty and grave responsibility from which we do

not shirk, in a proper proceeding, such as this is, by review to see that the selection of convention delegates at magisterial district conventions is regularly and fairly made. On the basis of the record before us, we are unable to say whether one or both of the two factions were responsible for the confusion which occurred at the Charleston mass convention. With that we are not concerned. We simply hold that this record shows that if the Bennett delegates were selected, their selection was in the midst of such confusion and turmoil that neither the convention chairman nor anyone else present could know whether the will of a majority of those present and entitled to vote was or could be expressed; and because, as the record discloses, a part of the forty-two delegates from Charleston District was essential for Bennett's nomination at the judicial convention on August 15, we say that that convention did not make a legal nomination.

Such conclusion obviates the necessity of a discussion and determination of the legality of the decree of this Court rendered on August 15, 1942, in the equity suit of D. J. Savage v. Grover C. Robertson et al., wherein this Court issued a temporary injunction restraining the holding of the convention of August 15.

It follows from the foregoing discussion that Paragraphs 1, 2, and 3 of the prayer of the petition should be granted and a peremptory writ of mandamus awarded, "commanding that Luther Carson, chairman, and J. E. Howell, secretary of the Kanawha County Democratic Judicial Convention, held on August 15, be required forthwith to recall from respondent Hix, Clerk of the Circuit Court of Kanawha County, their certification of the nomination of Herman L. Bennett as the nominee of said convention for Judge of the Intermediate Court of Kanawha County; that said Hix, as said clerk, be required forthwith to return to said Howell, secretary as aforesaid, the certification made by Carson, as chairman, and Howell, as secretary, and that the respondents, Robertson, as chairman, and Clara Boyd, as secretary of the Kanawha County Democratic Executive Committee, be required forthwith to recall from the re-

spondent Carson, as temporary and permanent chairman of said judicial convention, the list of delegates and alternates certified by them to Carson as having been selected at the Charleston District Magisterial Convention, and recall and cancel the purported resolution of said district convention purporting to instruct said delegates certified by Robertson and Boyd to cast the votes of that district for Bennett."

Having thus disposed of the legality of the Bennett delegates, we next inquire whether the Savage delegates are entitled to be certified. The "second phase of the convention" at which such delegates were selected was conducted in an orderly manner, but this harmony undoubtedly existed because those who remained in the convention hall after the Bennett supporters left were of one opinion—namely, to instruct delegates for Savage. We do not believe that approval of the Savage delegates may be accorded by this Court in view of the fact that the turmoil which led us to stamp as invalid the purported legal selection of the Bennett delegates was participated in by the leaders of those who now seek certification. We do not say that their insistence for recognition was wrong, but we may not say that their action after a large portion of those who assembled for the mass convention had departed gives them the clear legal right which is requisite to the issuance of the writ of mandamus. Despite the testimony that a count was made of those who remained after the Bennett supporters left, the same lack of mathematical certainty attends such evidence as did Carey's view that, without count, he knew that a majority desired the selection of the Bennett supporters. To accord approval would be as much a denial of the right to those who departed to participate in the selection of delegates as the action of Carey and Robertson was a denial of the rights of the Savage adherents. Moreover, its temporary chairman, unlike Carey, was not appointed by the executive committee as the statute (Code, 3-4-27) provides. It follows that the prayer of the petition, praying that a peremptory writ be issued commanding Robertson, chairman of the executive committee, to certify at a newly-called county convention the

list of delegates and alternates which was certified to him by Brown, as chairman, and Lyon, as secretary, should be denied.

Paragraph 6 of the prayer of the petition seeks to have Robertson, as chairman of said executive committee, certify at a reconvened and newly-called convention a list of delegates and alternates from Union, Jefferson and Malden Districts, claimed to have been pledged to vote for Savage. No evidence was introduced before the executive committee on the seating of the delegates and alternates from these three districts; and since the issue concerning the forty-two delegates from Charleston District is decisive of this case, the question whether the relators are entitled to the granting of the prayer of the petition in Paragraph 6 thereof is immaterial.

Relators likewise pray that the executive committee be required to call a county convention to be held not later than such date as this Court may determine "for the purpose of nominating a candidate for the office of Judge of the Intermediate Court of Kanawha County." We have observed heretofore that one hundred thirteen delegates compose a Kanawha County judicial convention, of which number forty-two are from Charleston District. From the record it appears that of the remaining seventy-one votes, forty-eight votes thereof are instructed for Bennett. Respondents admit that fifteen votes were instructed for Savage, while they deny that the eight delegates from Union District were instructed for Savage. Though the delegates from Union District should cast their votes for Bennett, he would still lack a majority. Likewise, Savage would not have a majority. Hence, without the delegates from Charleston District, it would serve no purpose to call a county convention. "Mandamus will not be issued to compel performance of an act which will not result in any benefit to the party seeking the writ." *State ex rel. Ryan* v. *Miller,* 82 W. Va. 490, 96 S. E. 791.

For the foregoing reasons, the writ of mandamus will be awarded in part and denied in part.

*Writ awarded in part;*
*denied in part.*

Rose, Judge, concurring:

I have readily concluded that the relators have not shown themselves clearly entitled to have the delegates certified by Brown and Lyon to be the legally selected delegates from Charleston magisterial district; but I have been greatly perturbed over the question whether the court, after having so found, could go further and adjudge that the delegates certified by Carson and Mrs. Boyd also were not legally chosen. As I understand the law, ordinarily, a contest can be maintained only by the contestant's showing himself entitled to the office in controversy. The considerations which satisfy my associates that this Court could in this case rightfully pass on the legality of the selection of the Carson and Boyd delegates do not seem to me entirely adequate; but I find a statutory provision in our Code, and certain construction thereof by this Court which, in addition to what is said in the majority opinion, lead me to make this decision unanimous.

The statute relating to the nomination of candidates for judicial positions by delegate conventions provides that "All contests over the selection of delegates to either of said conventions shall be heard and determined by the party executive committee of the county from which the delegates are chosen, * * *." Code, 3-4-27. There is nowhere in this statute any statement as to what may be the basis of such contest or as to the persons who may be contestants. I resort, therefore, to the general statute relating to contests of elections. Code, 3-9-2, provides: "A person intending to contest the election of another to any county or district office, including judge of any criminal, intermediate, common pleas, or other inferior court, or any office that shall hereafter be created to be filled by the voters of the county or of any magisterial or other district therein, shall, within ten days after the result of the election is declared, give the contestee notice in writing of such intention, and a list of the votes he will dispute, with the objections to each, and of the votes rejected for which he will contend. If the contestant object to the legality of the election, or the qualification of the person

returned as elected, the notice shall set forth the facts on which such objection is founded." It is thus plain that one's election may be contested on the ground of (1) disputed votes; (2) lack of qualification for the position, or (3) illegality of the election. If the contest is based on the last mentioned ground, the contestant, of course, cannot allege or show that he himself was legally elected. The election being illegal, it necessarily follows that neither the contestant nor the contestee have any right to the office. Yet the statute would seem to authorize the institution and maintenance of a contest on this ground, and, necessarily by one with no valid claim to be elected, and this construction has been placed on the statute. In *Dryden* v. *Swinburn,* 15 W. Va. 234, this Court having under consideration the sufficiency of a notice of contest given under this statute, held that "The notice was sufficient, it not being necessary, when the ground of the contest was only the want of qualification to hold the office by the party returned as elected, to furnish with it a list of votes to be disputed, nor to state facts showing that the person giving the notice was entitled to the office." Judge Green, discussing the statute, says: "Thus it expressly provides that the contestant may object to the legality of the election; and this may be the whole basis of his contest. Of course, if the election was declared to be illegally held, which conclusion and judgment of the court is evidently contemplated as possible, then the contestant could not possibly be declared by the court as elected. And yet he may, the statute says, allege this as the ground of the contest, and it follows necessarily that the notice need not set out facts which show that the contestant is entitled to the office, as the appellant's counsel insists it must in every case." This Court later in the case of *Halstead* v. *Rader,* 27 W. Va. 806, in point 1 of the syllabus, said: "A notice in a contested election case must set forth with reasonable certainty the facts on which the contest is founded; and they must be such that, if sustained by proof, they will make it the duty of the court, either to vacate the election or declare that another person than

the contestee was duly elected." From these old cases, not modified as far as I can determine, it would seem to be the law of this state that one may contest an election on the ground of its illegality without showing any right to the office, by merely showing that the one returned as elected is disqualified, or that the election was illegal. Of course, these cases had to do with the general election, not mass meetings. But mass meetings for the selection of party candidates for judicial office in this state are now prescribed by law, and in them citizens do vote and delegates are selected. In the absence of any other controlling statute, the contest regarding delegates so chosen may well be considered subject to the applicable parts of the statute controlling contests of other elections, certainly to the extent of establishing the character of the person who may institute the contest.

.Before the court in this case, the right to contest the selection of the Carson and Boyd delegates was predicated first on the claim that the Brown and Lyon delegates were the legally elected delegates. We hold this claim is shown not to be well founded, but the relators also attack their competitor delegates on the ground that the pretended mass meeting at which the latter were chosen was unlawfully conducted and void. On this ground I think they should be able to base their right to maintain the contest, whether the relators are shown to be legally entitled to certification or not. The court may, therefore, continue its adjudication to the point of saying that the Carson and Boyd delegates also were, or were not, legally chosen. I, therefore, concur with the majority, but base my conclusions upon these additional grounds.

Nevertheless, query: Can the Court, after having reviewed and reversed the "decision of the committee" which we are authorized by the statute to review, go further and make an adjudication or order regarding matters which were not before the committee, but which happened afterward, such as the action of the convention and the certification of its result to the clerk of the circuit court by its officers?

Re: Relators' petition and motion, filed after the rendering of the opinion herein and the entry of an order in conformity therewith.

RILEY, JUDGE:

On September 26, 1942, relators filed their petition and motion praying that the opinion of the Court handed down on September 24, 1942, and the order entered on said date in conformity therewith, be molded and enlarged to require the respondents, members of the Kanawha County Democratic Executive Committee and its officers, to call and cause to be held a meeting of the members of the Democratic party in mass convention for Charleston Magisterial District to select delegates and alternates to attend the Kanawha County Democratic Judicial Convention for the purposes of nominating a candidate for the office of Judge of the Intermediate Court of Kanawha County, and that they be required to call and hold such county convention at a date not later than a specific date to be fixed by this Court.

Relators in their petition and motion state that because of their reliance upon the proposition that the delegates certified by Brown and Lyon, purporting to act as chairman and secretary, respectively, of the Charleston Magisterial District Convention, were entitled to be seated at the county convention, they did not in their original petition in mandamus pray in the alternative that a mass convention be held for the purpose of selecting delegates to a county convention thereafter to be called at such time as this Court might fix. Relators' prayer in the instant petition and motion respecting a mass convention, is for relief not specifically prayed for in their original petition; but in this particular relators rely upon the prayer for general relief contained in their petition.

Relators' counsel say that they are simply asking this Court to "mold the writ". We are well aware of the liberality which this Court has taken in years gone by to mold alternative writs in mandamus cases. In *State ex rel. Mount Hope Coal Co.* v. *White Oak R. Co.*, 65 W. Va. 15,

64 S. E. 630, 28 L. R. A. (N. S.) 1013; and *Densmore et al.*
v. *Mercer County Court,* 106 W. Va. 317, 145 S. E. 641,
this Court, following the early case of *Fisher* v. *The
Mayor, Recorder, etc., of the City of Charleston,* 17 W. Va.
628, molded the alternative writ to conform with the per-
emptory writ. In the *Densmore* case, this Court said in
point 2 of the syllabus: "The peremptory writ in man-
damus ordinarily follows the command of the alterna-
tive writ. Where the exigencies of a case require, how-
ever, the peremptory writ, provided it does not enlarge
upon the alternative writ, may vary from it. In such
case the latter will be amended to correspond with the
former." However, the alternative writ has been abol-
ished in this jurisdiction under the provisions of Code
1931, 53-1.

Relators here seek more than the molding of an alterna-
tive writ. There is no alternative writ to mold. They are
asking this Court, after a case has been regularly heard
and decided upon issues made up and the argument of
counsel, an opinion rendered therein and an order en-
tered in conformity with that opinion, to permit relators
to reopen the case, not upon a petition for rehearing, but
for the purpose of amending an original pleading and a
final order. Such procedure, if allowed, would permit
parties litigant to try their cases in this Court piecemeal,
in which event the judgments of this Court, at least in
cases in mandamus, would lack finality. The sole question
arising upon relators' petition and motion is one of pro-
cedure, and lends itself to only one solution, the dismissal
of the said petition and motion.

Judges Kenna, Rose and Lovins concur in this mem-
orandum.

Fox, PRESIDENT, dissenting:

I can not concur in the refusal of the majority of the
Court to award the writ prayed for in the amended peti-
tion. No Democratic candidate for Judge of the Inter-
mediate Court having been nominated, and there being
no more than two methods by which such nomination can

be made, namely, by convention or by committee, I am assuming that the refusal of the Court to require the calling of a magisterial mass convention has the practical effect of sanctioning a nomination by the appropriate committee which, in this case, is the Democratic Executive Committee of Kanawha County.

In my opinion it is the plain legal duty of every political committee to afford the voters of the political party it represents an opportunity to select candidates to be voted for in the general election. The statute provides for primary elections to be held every two years on a day fixed therefor; but not all candidates are selected by the primary election method. Except in cases of a vacancy in office caused by death, resignation or some other event creating such vacancy, from which arises a necessity to make a nomination for an unexpired term, candidates for judicial officers are nominated by conventions, and the delegates thereto are selected in magisterial mass conventions, as provided by statute, and the convention itself is held under statutory requirements—in all which the party committee is empowered to play a part. I think that a candidate in any party is entitled, as a matter of strict and clear legal right, to have an opportunity to submit his candidacy to the qualified voters of his party, either in a primary election or a convention, depending on the office he seeks, and that until he has that opportunity no committee has the right to make a nomination therefor. I think, too, that party adherents have the right to participate in the selection of candidates to represent them on the ticket to be voted on in the general election.

I am not unmindful of the provisions of Code, 3-4-23, providing for the filling of vacancies, which states that such vacancy is created by "failure to make a nomination for the office at the primary election, or otherwise". Of course, a vacancy exists where no one becomes a candidate in either a primary election or a convention, and for that reason no nomination is made. Such vacancy would be created by the death, or withdrawal of the

candidate nominated, or his removal from the political division to which his candidacy is submitted. Other contingencies which might be mentioned, occurring after a primary or convention, are covered by the word "otherwise" used in the statute. I do not think the statute covers a situation where there has not been a convention held, as in the case before us. The strongest case for the contrary view is *Doddrell* v. *Payne,* 87 W. Va. 306, 104 S. E. 733. That was a case where there had been a primary election and a subsequent vacancy. Here no convention has been held, and I do not think the case cited is controlling.

I am not disturbed by the suggestion that there would not now be time to conform to the provisions of the statute governing the holding of mass conventions, contesting the result thereof, and the holding of the coming judicial convention. The attempts made to hold conventions of both classes having proved abortive, I think there is authority and reason for the proposition that, treating the provisions as to dates of conventions and contests as directory, these conventions may still be held in time to secure the placing of the nominee of the judicial convention on the ticket for the November election; and that the statutory provisions as to time may be disregarded in order to uphold the fundamental right of candidates and the public to have the nomination made by the voters instead of a committee.

In nine of the ten magisterial districts of Kanawha County the Democratic voters met and selected delegates to a county judicial convention. Seventy-one delegates were so selected, and the total number which could have been selected was one hundred and thirteen. Therefore, by leaving the nomination to committee action a large majority of the delegates legally selected are deprived of any voice in the nomination, and by the same token the voters who selected these delegates are likewise denied any voice therein.

For these reasons I am of the opinion that the writ of mandamus should be remolded and awarded, commanding the Democratic Executive Committee of Kanawha

County to issue a call for a mass convention in Charleston Magisterial Convention. Such mass convention should be held at an early date, in order that the county judicial convention may be held on a date which will permit the nominee of such convention to be placed on the ballot for the November election.

One further statement: I share the reluctance of my associates to employ the processes of this Court in attempting to settle this unfortunate and unseemly dispute over a high judicial office. I agree with them that we should shirk from even seeming to interfere in a political contest. But I regard the issue here presented of such importance as to justify such action on our part as may be necessary to insure to the people of Kanawha County the fundamental right, thus far denied them, to have a voice in the selection of their public officials. If no mass convention for the selection of delegates in Charleston Magisterial District be held that right will be finally denied, and to such denial I can not agree.