# CHARLESTON.

REPUBLICAN EXECUTIVE COMMITTEE v. COUNTY COURT.

Submitted October 18, 1910.    *Decided· October 20, 1910.

1. ELECTIONS—*Proceedings Before State Central Committee of Political Party—Jurisdiction—Service of Notice of Process.*
   In a proceeding instituted before a state central committee of a political party, begun by one of two contending county committees against the other, service of notice or process upon. the chairman and secretary of the contestee committte, should be regarded as sufficient to give such state central committee jurisdiction of the parties to the controversy.

2. SAME—*Interference of Court With Political Parties—Jurisdiction.*
   A case in which the principles announced in *Boggess* v. *Buxton, clerk,* 67 W. Va. ——, and particularly in points four and five of the syllabus, are approved and applied.

3. SAME—*Interference of Court with Proceedings of Political Party.*
   Where there are two executive committees in a county, each claiming to be the regular and lawful county committee of a particular political party, and the question of such regularity has been submitted to and heard and determined by the state central committee for such party, being the highest political authority of the party in the state, and after due notice served on the chairman and secretary of the contestee committee, no state convention intervening with authority to supervise or overrule it, the judgment and findings of such state committee that one of said contesting committees is, and the other is not, the regular and legally constituted county committee for such party, will be treated as conclusive of that matter when afterwards brought in question or involved in a judicial proceeding, whether such contestee committee appeared and submitted the merits of its claims to the judgment of such state committee or not.

. *Mandamus* by the Republican Executive Committee against the County Court of Wetzel County and others. ·

    *Writ Awarded.*

*F. V. Iams, B. H. Blagg, M. G. Sperry* and *John L. Whitten,* for petitioners.

*J. W. McIntire* and *Thos. P. Jacobs,* for respondents.

---
*Opinion filed November 1, 1910.

MILLER, JUDGE:

Upon the petition of H. E. Wise, chairman, P. D. Morris, secretary, and eleven others claiming to be the regular Republican executive committee for Wetzel county an alternative writ of *mandamus* was awarded against the county court of said .county, and against A. E. McCaskey, chairman, L. V. McIntyre, secretary, and others; also claiming to be such regular executive committee, commanding them to appear in this Court and show cause, if any they could, why a peremptory writ should not issue commanding county court to appoint as election commissioners the several persons nominated . by them, through H. E. Wise, chairman, to represent said party at the various voting precincts in said county at the November election.

For convenience of designation the two contesting committees will be referred to as the Wise committee, and the McCaskey committee.

The defendants in their return to the alternative writ controvert the claim of petitioners to be such regular Republican executive committee, and, on the contrary, represent that the said A. E. McCaskey, chairman, and others, constitute such committee, and allege that upon their nomination the said county court, in the exercise of its powers and duties in that behalf, had already appointed as election commissioners, to represent the said Republican party at the various voting precincts in said county, the nominees and persons designated by that committee.

The jurisdiction of this Court has not been seriously questioned in this case, and all we need say on this subject is to refer to *Boggess* v. *Buxton,. clerk,* decided at the present term, and not yet officially reported.

It is not controverted that up to the time of the primary election, called by the McCaskey committee, held on June 14, 1910, that committee was the regular committee, but it is claimed by· the petitioners that upon that day, and at that election, the said Wise committee was duly elected by the Republican electors participating in said election, receiving, out of the 623 votes cast, 484 votes, entitled them, as it is alleged, to be thereafter treated and recognized as such county executive committee, with right to nominate said election commissioners.

It is agreed that the call issued and published by the Ma-Caskey committee for said primary election did not include a call for the election of a new executive committee, but it is claimed that the term of office of the members of the McCaskey committee expired by limitation upon the date of said primary election, by a rule or resolution, never changed or abrogated, adopted at a regular county convention, held in 1902, providing as follows: "An executive committee shall be chosen by the convention to be held every two years, to consist of two members from each district, which committee shall select its own officers." And it is alleged that in calling said primary election the McCaskey committee, in order to perpetuate themselves in office had wholly disregarded said party rule, and had ignored the petition of over seven hundred Republican electors of said county, to include in its call for said primary election the subject of electing a new executive committee, and that in view of this conduct of said committee the voters at said primary election had asserted their rights in the premises and regardless of the call of said McCaskey committee, had by means of stickers or otherwise, provided for the purpose, voted for and elected petitioners, thereby entitling them to be regarded and recognized as such regular executive committee.

The McCaskey committee, in justification of its omission to include in its call for said primary election, the election of a new executive committee, allege that at a county convention held in said county, August 15, 1908, all the members thereof, except Lahew of Proctor district and Carney and Seeley of Center district, were elected for four years, the three last named being elected for two years only, and they exhibit what they claim are the original minutes of that convention, signed and verified by Theodore Van Camp, secretary, but not signed by the chairman in the blank left for his name. Van Camp swears that these minutes are the true and full proceedings of said convention as made by him "to the best of his knowledge and belief." The correctness of these minutes as to the election of the executive committee is vigorously denied by the affidavits of some fourteen witnesses present at the convention, as well as by newspaper reports of the proceedings of the county convention, and of the district conventions, held in the several magisterial districts prior to said county convention. In none of these

published proceedings does it appear that the members of said executive committee elected by the district conventions were elected for the term of four years, or that the party rule or resolution adopted in 1902 was abrogated or changed by the county convention. Some two or three affidavits are filed by respondents in support of the correctness of these minutes, and some two or three certificates, not sworn to, are filed in support thereof, but these affidavits and certificates are not very definite or specific in their statements. It is not claimed that by any formal resolution adopted by the county convention in 1908, the rule providing for election of a county executive committee every two years was changed, but that according to the minutes certified to by Van Camp, secretary, the reports of the several district delegates of the election of a county executive committee by districts showing the election of all but three members for a term of four years, was adopted by the convention, and that the adoption of these reports operated to abrogate and annul the party rule adopted in 1902. It does not appear that these minutes were ever read and approved by the convention, and as we have said, they are not signed by the chairman of the convention, nor are the reports of the several district delegates referred to produced or accounted for. Moreover, it appears from the minutes of the several district conventions, held prior to the county convention of that year, and purporting to be certified by the chairman and secretaries of said conventions, and published in the Wetzel Republican, a newspaper published at New Martinsville, August 6, 1908, that members of the county executive committee were elected at said district conventions; but in none of these minutes does it appear that they were elected for the period of four years, or for any particular period, except, as may be implied for the term fixed by the party rule adopted in 1902. The fact that in two of the districts, as shown by the Van Camp minutes, three of the members were elected for but two years, is significant. There is a sugestion in one or two of the affidavits filed by the respondents, that perhaps the subject of electing committeemen for four years was first suggested by some of the delegates to the county convention on the day of that convention, in view of the factional difficulties occurring there, in disregard of the party rule, and of the action of the several district conventions. H. O. Showalter, for example, in his affidavit goes so

far as to say that he was the mover of a resolution to change the rule of electing county committeemen from two to four years. If such a resolution was proposed and acted upon by the county convention, the Van Camp minutes do not show it. Based on these minutes the most that is claimed by the respondents is that by adopting reports of the several districts delegates of the election of certain members for four years, the term of two years was changed to four. But we think that the incorrectness of the Van Camp minutes in this particular is very clearly shown by the affidavits filed, and the published reports of the minutes of the county and district conventions.

Petitioners, however, do not rest their claims solely upon the facts recited. They plead the judgment of the state Republican executive committee, of June 19, 1910, as conclusive of their rights. They also rely upon the fact that the Republican congressional and senatorial committees have recognized the Wise committee as the regular county executive committee. The state committee found, first, that the rules adopted by the Republican mass convention held in 1902 were still in full force and effect, and the rules which should govern in the election of a county executive committee; second, that at the conventions held in 1904, 1906 and in 1908, members of the county executive committee had been elected for the term of two years, pursuant to said rules; third, that at the primary election, held June 14, 1910, the petitioners in this case had been duly elected and constituted the regular Republican executive committee for said county; that the organization of the said committee was regular, and it declared that H. E. Wise had been duly elected chairman, P. D. Morris, secretary, and Walter F. Burgess, treasurer of said committee, and that said committee be duly authorized and empowered by that committee to transact all the business incident to their office.

The binding force and effect of this finding and judgment of the state committee is challenged by respondents on three grounds: First, upon the ground that it had no jurisdiction of the subject matter; second, that it had no jurisdiction of the parties; and third, that the case was tried before said committee without notice to any of the parties, except McCaskey, chairman, and McIntyre, secretary. It is conceded that notice was served only upon McCaskey, chairman, and McIntyre, secretary of the

said McCaskey committee. But the minutes of the state committee show appearance by counsel on behalf of the contestees without exception. The correctness of these minutes in this particular is challenged by affidavit, but we regard the fact immaterial. In our opinion the notice served upon the chairman and secretary is sufficient. The individual members had no personal rights or interests involved, not fully represented by the chairman and secretary. A judgment which would bind them would bind the whole committee, and we see nothing material in the claim of want of notice.

If the judgment of the state committee is binding we are not called upon to determine the merits of the controversy, even if we had jurisdiction to do so, which we need not and do not decide. In *Boggess* v. *Buxton, clerk,* already cited, we held, points four and five of the syllabus, that in the absence of statute the courts do not exercise jurisdiction to interfere or control in matters purely political, the management and proceedings of a political party; and that when the committees or conventions of a political party have had the claims of contesting county executive committees to represent a party before them for decision, and have decided that one of them is, and the other is not, the true and legitimate county executive committee, the courts will not review such decisions, but will hold it conclusive in matters before the courts involving the question which is the lawful county executive committee. Judge BRANNON in this case reviews most of the leading decisions on the subject, which relieves us of repetition here. The reason upon which most of these decisions are based is that the matters involved are purely political, not cognizable by the courts, and that in the absence of statute, where factional controversies arise, there is no place or jurisdiction where such difficulties may be adjudicated and settled, except by the highest governing committee or convention of the political party to which contestants belong. Under our form of government, and particularly under our so called Australian ballot law, it has become of the very highest importance to the peace and good order of society, and to the peaceable and orderly conduct of elections by the people, that such party controversies should be settled and determined by some competent authority. If the courts are without jurisdiction, and we have decided that in the absence of statute they

are, unless the decision of such controversies may be properly referred to judgment of the governing political authorities, and their decisions treated as binding the parties and the courts, political parties would become disorganized and disrupted, party discipline would be gone, and the agencies recognized by statute for securing the orderly and peaceable conduct of elections to public office would become inefficient and powerless in the performance of the duties developed upon them. *Ex-necessitate,* therefore, these political committees and conventions must be accorded jurisdiction to decide and finally determine all such political questions, and their judgments should be treated by the courts as conclusive, when brought into question in judicial proceedings. The principles decided in *Boggess* v. *Buxton,* and in the judicial decisions referred to therein we think fully support these conclusions.

Judge Martin in *In Re Fairchild,* 151 N. Y. 359, 366, referring to the conflict of judicial authority on this subject, one class holding, as he says, that the determination of party conventions or party authorities has no weight whatever, the other, that in determining questions as to the regularity of conventions, officers and courts should rely upon the action and determination of such regularly constituted party authorities where there has been such determination, says: "We think the latter effectuates the obvious intent and purpose of the statute. It is much more proper that questions which relate to the regularity of conventions, to the nomination of candidates, and the constitution of committees should be determined by the regularly constituted party authorities, than to have every question relating to a caucus, convention or nomination determined by the courts, and thus, in effect, compel them to make party nominations and regulate the details of party procedure instead of having them controlled by party authorities. We think that in cases where questions of procedure in conventions, or the regularity of committees are involved, which are not regulated by law; but by party usages and customs, the officers called upon to determine such questions should follow the decision of the regularly constituted authorities of the party, and courts in reviewing the determination of such officers should in no way interfere with such determination. We think an opposite rule would be in conflict with the spirit and intent of the statute, burden

the courts with a class of litigation that would be unfortunate and embarassing, and might produce results entirely at variance with the will of a majority of the electors of the party."

The case of *Cain* v. *Page,* (Ky.) 42 S. W. 336, we regard authority for the proposition, that where the regularity of a county committee has been once determined and recognized, either by the highest governing body of that political party, as by the state executive committee in this case, or by a state convention, such decision should be respected and treated by the courts as conclusive on the question of party regularity and authority of such county committee.

In *State ex rel.* v. *Crittenden,* 164 Mo. 261, the jurisdiction of a state central committee to reorganize a local county committee, when it is shown that the local organization has become either disrupted or disorganized, and there is necessity for it, is practically conceded.

In *State* v. *Liudahl,* (N. D.) 91 N. W. 951, another case cited as authority in *Boggess* v. *Buxton,* the right of two contesting delegations to seats in the state convention was initiated before the state central committee, and the decision of that committee in favor of one set of delegates was approved and confirmed by the state convention. The question before the court in that case was whether a certain nominee for a county office, nominated at the same county convention at which the delegates seated in the state convention had been chosen, was entitled to a place on the official ballot as the regular nominee of the party. That particular question was not before the state committee or the state convention, and the court says: "True, the regularity of that convention was only recognized by the seating of the delegates sent by it to the state convention. That, however, was a recognition of it as the regular convention for that purpose, and if regular for that purpose, it must be the regular convention for all purposes for which convened. A convention cannot be the regular one for one purpose, and not the regular one for another within its scope or authority to act."

But it is claimed by respondents that there was no statute, party rule or custom, giving the state executive committee jurisdiction to decide the question presented, and that, as they claim, they did not appear and submit themselves or their cause to the decision of that committee, it is not binding on them, or deserv-

ing of recognition by this Court. They did, however, appear, at least it is conceded that the chairman and secretary appeared by counsel, and besides challenging the jurisdiction of the committee, according to the record of the committee, they requested further time. The original notice served upon McCaskey, chairman, and McIntyre, secretary, was returnable before the committee at Huntington, July 15, 1910, but a quorum of the committee not being present, an adjournment was taken to July 19, four days later, at Parkersburg, a point nearer to respondents' residence, by more than half the distance and respondents were given ample opportunity to be fully heard. If, as they contend, they did not have a full hearing, they were given the opportunity, and we think they should have submitted their claims to that committee. If they had done so, there would be no difference between this and *Boggess* v. *Buxton.* But the principles of that case are applicable to this. The matter in question having been so heard and determined, however, by the state committee on notice, and there being no other judicatory to decide the question, no convention intervening, with authority to supervise or set aside the judgment of the state committee, its judgment on the question of party regularity became conclusive, and should be treated as binding upon this Court in this controversy.

Without the right to decide in such cases a state executive committee, and the executive committees of any other political division would be obliged, in some instances at least, to submit the interests of the party and of its candidates to disloyal local executive committees, and to be represented in elections by unfriendly, disloyal and hostile election officers. In the case we have here there is much evidence tending to show disloyalty, if not actual hostility, on the part of some of the McCaskey committee to some of the regular nominees of the party, and that they are actually in collusion with the committees and party managers of the opposite party to compass the defeat of the candidates of the party they profess to represent, and secure the election of the candidates of the opposite party, and that if the election officers, nominated by the McCaskey committee, and appointed by the county court, the members of which court are of the opposite party, are to officiate there will be practically no representation of the Republican party in the holding of the

election. It was said in *State ex rel.* v. *Weston,* 27 Mont. 194, "The state convention represents the Democratic party of the state as an entirety, and in a limited sense it speaks for the territorial sub-divisions of the party." So in this case we say, the state Republican executive committee, no state convention intervening, represented the party in the state as an entirety, and it must be regarded as having the power and jurisdiction to detremine the regularity of the local county committee. Unless this be the true doctrine, as it is said in the Montana case, just referred to, "the party would be left utterly without power to preserve its own organization and integrity, and one of the most effective means for the preservation of our institutions would be wholly destroyed. The power to decide these disputes must rest somewhere, but it is far safer and much more is accord with our free institutions that it should remain with the judicatories of our political parties, where it of right belongs." At another point the Montana court says: "It would be intolerable if, upon the occasion of every factional dispute in a county or district in the state, the courts could be called upon to determine which faction is entitled to the use of the party designation. The well being and safety of the party organization require that it should hold and exercise this power."

Take the conditions existing in this state. Our election law, section 26, chapter 3, of the Code provides that: "State, congressional, judicial, senatorial, district and county executive committees shall be appointed by each political party making nominations of candidates for office, and it shall be the duty of the committees so appointed to do and perform the duties required of them by this chapter." Other provisions of the law give right and impose the duty on county committees of certifying to the county court or other officers, nominations for ballot commissioners, and election officers, to represent their respective parties in the holding of elections, and it is the duty of the county court or other officer upon whom the duty is imposed, without discretion, to appoint the nominees of such political committees, this for the purpose, not only of securing honesty and fairness in the elections, but that the leading parties interested may have representation. As a general rule county courts and other officers charged with the duty of making these appointments are partisan, all or a majority being of one political party or the

other, and if the power and authority to decide between the contending political factions or committees was conceded to be in them, the very purposes of the statute in giving party representation in our elections might be easily thwarted, the law rendered inefficient in the accomplishment of its object, and many wrongs and injuries done to the opposite party.

Upon reason as well as authority, therefore, we are satisfied that the mandatory writ was properly awarded.

*Writ-Awarded.*

BRANNON, JUDGE, (*dissenting.*)

I regard the decision in this case important as impairing political power and right in the counties. I cannot agree that a state committee has power, when its jurisdiction is contested, to decide which of two party committees in a county is the true one, and bind the courts by that decision. By this a limited number of persons, non-residents of the county, are given final power, unless reversed by a state convention, to say which is that party power most important in the county, the ruling power, the county executive committee. This county committee calls conventions and performs the executive work of the party. No resolution of a state convention, the supreme law making body of a party, has been shown conferring upon the state committee this great power. Whence does it come? Usage in some instances has sanctioned it; but, when contested, whence its binding power? Such committee is merely executive, administrative and directory in state campaigns. Even its roster of delegates to a state convention is not final, but must go before a credentials committee. It can not settle titles. A party in a county is an entity of itself, a unit in the state organization, in communion with the state party, but having its separate, distinct governing committee and powers.

It cannot be said that the state committee must of necessity act in contest for want of another tribunal. The county court can hear the claims on application for appointment of commissioners of election.

Which is the true county committee? It is not questioned that a Republican county convention had appointed a county committee. That committee called a primary for some purposes,

not including the election of a new executive committee, and a number of persons claiming that the last county convention had made the terms of the committee two years only, and that a new committee should be elected, assembled, without any call, and decided that such new committee should be chosen, and from this meeting started a petition of about seven hundred voters asking the county committee to include in the primary call the election of a new committee; but this was refused, the committee claiming that its term was four years of which two years remained. Then four hundred and eighty-four out of six hundred and twenty-three voters voting at the primary voted for a new committee, and this is the new committee contesting with the old the right to designate precinct election commissioners. Who authorized this election of a new committee? No constituted authority. It was only the work of the few who got together in that self-constituted conference and those voting, a small fraction of the party. The legal committee had refused to include in its call the election of a new committee. Its authority was recognized in other respects, but disregarded in this. If legitimate for some purposes, why not for others? Of this election of a new committee no notice was given, it was not included in the call of the primary. The great body of voters had no notice and were not at the primary. This election of a new committee was irregular, revolutionary, because not authorized, and conferred no authority upon the new committee. If individuals of a party, without authority, but in defiance of party authority, can thus assume the reins what becomes of organization? Was the term of the old committee two or four years? We have before us the original minutes of the county convention, verified by its secretary's oath, which shows that eleven of the fourteen members were elected for four years. True, there are a number of affidavits denying this, and a number sustaining it, and thus a conflict. We cannot thus falsify the only official evidence before us.

The case of *Boggess* v. *Buxton* has no force as a precedent in this case. We held the decision of the state committee binding, not because of its inherent jurisdiction, but because the contestants submitted to its jurisdiction, and in the language I included state committee as among the party authorities deciding, because of this submission to its authority; and stated that they

acknowledged its authority, and made it an arbitrator, and distinctly said in the opinion that we did not say what would be the authority of the state committee alone in the absence of the decisions of the conventions 'which passed on the claims of the committees contesting in that case. But in this case the old committee appeared before the state committee specially and only to object to its jurisdiction, and when that exception was overruled, withdrew and did not submit its case.