# CHARLESTON.

STATE *ex rel.* WM. W. DOWNEY *v.* H. H. EMMERT *et als.*

.(No. 5833)

Submitted September 22, 1926.   Decided September 28, 1926.

1.  ELECTIONS—*In Absence of Controlling Statute, or Clear Legal Right Involved, Supreme Court of Appeals Will Not Assume Jurisdiction of Controversy Arising in Party Convention.*

    In controversies arising within a party convention, where there is no controlling statute or clear legal right involved, this court will not assume jurisdiction, but will leave the matter for determination by the proper tribunals of the party itself, or by the electors at the polls.   (p. 196.)

    (Elections, 20 C. J. § 124.)

2.  MANDAMUS—*Mandamus Does Not Lie to Compel Officers of Political Convention to Certify Nomination of Claimant After Convention Declared Another Nominated, Though at One Time, Before Result Had Been Declared, Relator May Have Had Majority; to Entitle Claimant to Mandamus to Compel Officers of Party Convention to Certify His Nomination, it Must Clearly Appear That He is Party Nominee,*

*and Legally Entitled to Have His Name Placed on Official Ballot (Code, c. 3, § 26a [291]).*

Mandamus will not lie under § 26a (29), Ch. 3, Code, to compel the chairman and secretary to certify the nomination of one claiming a nomination, after the convention has declared another nominated, even though at one time during the taking of the ballot, but before the result thereof had been declared, said relator may have had a majority of all of the votes to be cast. To entitle such claimant to this remedy, it must clearly appear that he is the party nominee, and legally entitled to have his name placed upon the official ballot as such. (p. 196.)

(Mandamus, 38 C. J. §§ 321 [Anno], 321.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of Syllabi.)

Proceeding by the State, on the relation of William W. Downey, for mandamus to be directed to H. H. Emmert and another, chairman and secretary, respectively, of the Democratic judicial convention for the Twenty-Third judicial circuit.

*Writ denied.*

*George Poffenbarger, A. C. McIntire, Roger Earl Watson,* and *Allen B. Noll,* for relator.

*F. W. Brown, W. H. Thomas, J. O. Henson, Adrian C. Nadenbousch* and *Harry H. Byrer,* for respondents.

WOODS, JUDGE:

The relator, Wm. W. Downey, instituted this proceeding against the respondents, H. H. Emmert and J. Frank Beckwith, Jr., as chairman and secretary, respectively, of the Democratic judicial convention for the twenty-third judicial circuit, to compel them to certify his name as the nominee of the Democratic party of said district for judge of said circuit, claiming that he was legally nominated.

Relator, a resident of Jefferson county, and Cleveland H. Seibert, a resident of Berkeley county, were rival candidates for the nomination. Each had at least a few delegates favoring him from each one of the three counties. In the convention, Berkeley was entitled to 45 votes; Jefferson, 43; Morgan,

11. The rules of the last National Convention of the National Democratic party, held in New York, were unanimously adopted as the rules of the convention, except that a majority would nominate. On the roll call to choose a nominee, the chairman of the Berkeley delegation announced 33 votes for Seibert and 12 for Downey; Jefferson (voting under the unit rule) followed with 43 for Downey. A poll was demanded of the Jefferson delegation by one of its members. The chair ruled that it could only be had with the assent of the Jefferson delegates. The poll was defeated and so reported back to the chairman. It appearing at this juncture of the balloting that Downey had a majority of all the votes to be cast, his supporters from Jefferson immediately started a demonstration upon the convention floor and were joined by his twelve supporters from Berkeley. During the general confusion the chairman discontinued the calling of the roll. Demands were made from the floor to call Morgan. Several motions to adjourn were made by Jefferson delegates; one delegate stating that he repeatedly made such motion, but that the chair refused to put the same. Cries of "Thief," "Robber," "Don't steal it," "Call Morgan," and similar remarks, were hurled at the chair by the Downey delegates. During the demonstration and the confusion that followed, and prior to the calling for the Morgan county vote, the Berkeley county delegation (with possibly the exception of the twelve Downey delegates, who had strayed away, and who, as set out in their affidavits, had no notice) adopted the unit rule. After recognition by the chair, the chairman of the Berkeley county delegation cast their entire vote of 45 for Seibert. Morgan county was then called, and voted as a unit for Seibert. No protest of any kind or character being made or suggested by any delegates from Morgan or Berkeley county, and none being made from Jefferson county so far as the vote of Berkeley or Morgan county was concerned, the chair proceeded to announce the vote and to declare Seibert as the nominee of the convention. A committee was appointed to inform Seibert of his nomination, and on his entry to the convention hall the Jefferson delegation withdrew.

Both the petition and the return, together with the numerous affidavits supporting each, recite numerous matters respectively attacking and defending the proceedings on the convention floor during the time that transpired after Jefferson had voted and the calling for the Morgan county vote.

A convention is when assembled and organized the depositary of all party power and so continues until it adjourns. It establishes its own rules, in the absence of statutory regulation, and may proceed according to the rules and customs of the party. ''The discharge of the duties imposed on the convention involves the exercise of judgment and discretion on the part of its members, and a majority of them have, in the absence of fraud or oppression, the right to control the action of the convention and to correct or reverse any action taken by it, and its final determination as to candidates or any other question within its jurisdiction will be followed by the courts.'' 9 R. C. L. 1067.

Do the actions of the chair in delaying the roll call and in permitting Berkeley county to change its vote constitute such a fraud or oppression as would entitle relator to seek relief in the courts? A convention cannot speak for itself. It must speak through its chairman. No matter what proposition may receive the assent of the majority, the chair must give expression thereto, and an opportunity for formal objection to such announcement by the chair. While the members of the convention direct him to speak for it, the convention can make no order nor declaration except through the mouth of the chair. The fact that the chairman in the instant case did not call for Morgan county's vote, but waited until some degree of order was restored, was perfectly proper, for it was his duty to first carefully ascertain the will of the convention before attempting to announce the same. Up until the announcement of the result of the ballot, any of the three county delegations were at liberty to change their vote. This Berkeley did. Any one of the twelve Downey delegates from Berkeley could have demanded a poll of their delegation before the result of the ballot was announced. This they did not do. The fact that the majority of the Berkeley county delegation,

after witnessing the use of the unit rule in Jefferson county whereby Seibert was deprived of a number of delegates, in order to protect the interest of their candidate proceeded to invoke the unit rule and change their vote, casting the entire 45 votes for Seibert, is a matter entirely within the power of the convention to regulate, and is not a question with which the court has the slightest concern. If by their actions in invoking the unit rule, the delegates violated any party pledges or sacrificed any party interests, such matter must be settled between them and their constituents. Delegates to political conventions while in a sense trustees for their constituents, discharge a trust with which the courts do not meddle. They obey or disobey instructions as they see fit, and the only remedy for their disobedience is the censure of the people, expressed at the polls. The question is one essentially political, and not judicial, in its nature.

The facts set forth in the several affidavits of the relator are not sufficient on their face to show a case of fraud on behalf of the convention in the nomination of Mr. Seibert for judge. The vote as recorded and announced became the voice of the convention. Since a ballot declaring Downey nominated was never received or announced by the chair, a writ of mandamus clearly will not lie under Sec. 26-*a*(29), Ch. 3, of the Code, to compel the respondents to certify to such a fact. The writ will therefore be denied.

*Writ denied.*