STATE *ex rel.* HULETT C. SMITH, *Chairman, etc., et al*

*v.*

STANLEY S. BOSWORTH, *Judge, etc., et al*

(No. 12074)

and

STATE *ex rel.* DOYLE F. MCLAUGHLIN, *et al*

*v.*

STANLEY S. BOSWORTH, *Judge, etc., et al*

(No. 12075)

Submitted October 18, 1960. Decided December 6, 1960.

754

Arden J. Curry, for relators.

*Arden J. Curry,* for relators.

*William M. Kidd,* for respondents.

HAYMOND, JUDGE:

These two original proceedings in prohibition were instituted in this Court on September 28, 1960, to prohibit the judge of the Circuit Court of Randolph County and the petitioners in two proceedings in mandamus instituted in the Circuit Court of Braxton County on September 20, 1960 and which by orders entered on that date were transferred to the Circuit Court of Randolph County, from the further prosecution of those proceedings in mandamus in the Circuit Court of Randolph County. By agreement of counsel and by leave of this Court these proceedings were argued and submitted together as a single proceeding and they will be considered as such and dealt with in one opinion.

In one of these proceedings the petitioners, Hulett C. Smith, Chairman of the West Virginia Democratic State Executive Committee, and Doyle F. McLaughlin, Chairman of the Braxton County Democratic Executive Committee, seek to prohibit The Honorable Stanley S. Bosworth, Judge of the Circuit Court of Randolph County, and Frank E. Foster, from taking any further action in the mandamus proceeding instituted

in the Circuit Court of Braxton County and transferred to the Circuit Court of Randolph County, in which Frank E. Foster is petitioner and Hulett C. Smith and Doyle F. McLaughlin are defendants. In that proceeding in mandamus the petitioner seeks a writ to require the defendant Hulett C. Smith to submit to the circuit court all papers and records relating to his action in casting his vote for chairman of the Democratic Executive Committee of Braxton County and to cease and refrain from any further action in casting the deciding vote for chairman of such committee, and to require the defendant Doyle F. McLaughlin to admit Foster to the office of chairman of such committee, to deliver and surrender to Foster the property, books and papers of such committee, and to refrain from acting as chairman of such committee.

In the other of these proceedings the petitioners, Doyle F. McLaughlin, Lee Dennison, Hazel Hardman, Betty Hefner, Fred Singleton and Margaret Pearl Duffield, seek to prohibit the defendants, The Honorable Stanley S. Bosworth, Judge of the Circuit Court of Randolph County, and Troy J. Carr, James H. Hall, Virginia Hall and Rosalie Nottingham, from taking any further action in the mandamus proceeding instituted in the Circuit Court of Braxton County and also transferred to the Circuit Court of Randolph County, in which Troy J. Carr, James H. Hall, Virginia Hall and Rosalie Nottingham are petitioners and Doyle F. McLaughlin, Lee Dennison, Hazel Hardman, Betty Hefner, Fred Singleton and Margaret Pearl Duffield are defendants. In that proceeding in mandamus the petitioners seek a writ to require the defendant Doyle F. McLaughlin to refrain from hindering the Democratic Executive Committee of Braxton County in the performance of its duties and to require him to submit to the committee all of its papers and records in his possession, to require Hazel Hardman to refrain from usurping the duties of secretary of the committee and to produce the minutes of all its meetings at which she acted as secretary, to require Lee

Dennison to divulge, under oath, whether he is a resident of the district which he was elected to represent and to refrain from acting as a member of the committee from Holly District, and to require all the members of the committee forthwith to hold a meeting and to record all proper motions in the minutes of the committee.

In each of the foregoing proceedings in mandamus by order entered September 20, 1960, a rule was issued upon the petition returnable before the Circuit Court of Randolph County on the 30th day of September, 1960, directed to and commanding the defendants, and each of them, to show cause why a writ of mandamus should not be awarded against them as prayed for in the petition and the judge of the Circuit Court of Braxton County, because of his disqualification, transferred the proceeding to the Circuit Court of Randolph County.

In each of these proceedings in prohibition a rule was issued returnable October 4, 1960, at which time, by agreement of counsel and leave of this Court, each proceeding was continued until October 18, 1960, to enable the respective parties to submit proof in the form of depositions. On October 18, 1960, each proceeding was submitted for decision upon the petition, the answer of the defendants other than the defendant Stanley S. Bosworth, who has made no appearance in these proceedings, the replication of the petitioners, the exhibits filed with the pleadings, the written stipulations of the attorneys for the respective parties, the depositions, and the written briefs and the oral arguments in their behalf.

At the primary election on May 10, 1960, Rosalie Nottingham and James H. Hall were elected members of the Braxton County Democratic Executive Committee from Birch District of that county, Troy J. Carr and Virginia Hall were elected members from Otter District of that county, Margaret Pearl Duffield and Lee Dennison were elected members from Holly District of that county, and Betty Hefner and Fred Singleton were elected members from Salt Lick District of

that county, and each of them assumed his or her duties as such on June 1, 1960.

On June 6, 1960, upon written notice to each member, the retiring chairman, Doyle F. McLaughlin, called a meeting of the committee for the purpose of electing its new officers. At that meeting, which was attended by all the members, Doyle F. McLaughlin and Frank E. Foster were nominated for chairman. The vote resulted in a tie with four members voting for McLaughlin and four members voting for Foster. After written notice to all members, the committee met again on June 27, 1960, at which time all members were present, and at that meeting McLaughlin and Foster each received four votes on the ballot taken which again resulted in a tie.

On June 28, 1960, the secretary of the county executive committee informed Hulett C. Smith, Chairman of the Democratic State Executive Committee, of the tie vote for the office of chairman of the county executive committee and requested him to cast the deciding vote to determine the election of the chairman of the committee in accordance with Section 6, Article VI, of the Rules and Regulations for the government of the Democratic Party in West Virginia, which provides in effect that if in the election of a chairman or other officer of a county executive committee there is a tie vote which can not be settled by the members of the committee within twenty days after the date of its first meeting, the chairman of the state executive committee or someone appointed by him for the purpose shall cast the deciding vote, which may be done by registered mail sent to the outgoing chairman, and that such vote shall be final.

On August 25, 1960, Smith addressed an unregistered letter to Doyle F. McLaughlin, in which he stated that he cast his vote for Foster and McLaughlin as chairman and co-chairman and in which he also cast his vote for other officers of the committee. McLaughlin testified that he never received the letter of August 25, 1960, but it is conceded that Foster received a copy of that

letter. On September 1, 1960, Smith sent a telegram to McLaughlin, in which he stated, in clarification of his letter of August 25, 1960, that he voted for Foster and McLaughlin as chairman and co-chairman with equal rights, and on the same date he addressed a registered letter to McLaughlin to the same effect. In the envelope for that letter was a copy of the letter of August 25, 1960, and McLaughlin received both those papers.

. A third meeting of the committee, at which all members were present, was held on September 9, 1960, but at that meeting the committee did not elect a chairman. On September 13, 1960, Smith, as chairman of the West Virginia State Democratic Executive Committee, sent a registered letter to McLaughlin, in which he stated that, under the provisions of the rules of the state committee and because he had been advised that the ballot cast in his letter of September 1, appointing co-chairman, was not proper and could not be considered as final, he cast his vote to break the tie in favor of McLaughlin as chairman of the county executive committee.

On September 17, 1960, pursuant to notice, the committee met again for the purpose of electing officers. The meeting was called to order by McLaughlin and all members were present and McLaughlin read the letter which he had received by registered mail from Smith appointing him chairman and, according to his testimony, a copy of the letter was furnished to each member. McLaughlin called for nominations for the other officers of the committee and having designated a vice chairman and a treasurer, to which there was no objection by any member of the committee, he declared the persons designated elected to those offices. While proceeding in the same manner in connection with the election of a secretary, James Hall, Virginia Hall, Rosalie Nottingham and Troy J. Carr withdrew from the meeting. After the withdrawal of those four members, the meeting was adjourned because the remaining

four members did not constitute a quorum of the committee.

At the meetings of the committee on September 9 and September 17, the regular secretary of the committee was absent. Hazel Hardman, the wife of the regular secretary, acted as secretary of the committee at the instance of McLaughlin and took notes of its proceedings which she has refused to transcribe and make available to Foster or some of the members of the committee who voted for him as chairman. The evidence is conflicting as to the action of the members of the committee at the meetings held on September 9 and September 17 concerning the eligibility of Lee Dennison to serve as a member of the committee. There is testimony by members of the committee who supported Foster that at those meetings motions were made and seconded to investigate and determine the eligibility of Dennison on the ground that he had ceased to reside in the district which he was elected to represent but that McLaughlin, acting as chairman, refused to entertain such motions. On the contrary, however, there is testimony by McLaughlin and members of the committee who supported him for chairman that though the matter was discussed no such motions were made at those meetings and that when that matter was mentioned the question of the election of a chairman or other officers was pending before the committee. It is clear, however, that no charge of ineligibility of Dennison to serve as a member of the committee was ever presented or lodged with the committee.

Section 6, Article IX, of the Rules and Regulations of the Democratic Party in West Virginia provides, in substance, that no person shall act as a committeeman or committeewoman of any executive committee who does not live in a political subdivision which he or she expects to represent; that if any member of such committee moves his or her voting residence from the State or from any political subdivision from which he or she is elected his or her office shall immediately become vacant; that the executive committee shall be the

judge of the qualification of its members; and that when it is charged that any member has removed from the political subdivision from which he or she has been elected and a trial to determine that matter shall become necessary, the chairman of the committee and four members appointed by him shall hear and determine such charge.

Article X of the Rules and Regulations of the Democratic Party in West Virginia makes provision for a board of appeals of seven members, to which shall be referred all disputes and questions appealed from any duly constituted executive committee or political convention. That article also provides that disputes and questions shall be decided by such board; that its decision shall be final in all cases unless overruled by a two-thirds vote of the state executive committee; that if a dispute arises in any political subdivision concerning the election of a member or an officer of any executive committee, except the chairman, such dispute shall in the first instance be heard and determined by the executive committee of the political subdivision in which such dispute arose; that the losing party shall have the right to appeal to the board of appeals; and that if the officer be the chairman of any executive committee he shall appeal directly to the board of appeals. The same article further specifies the procedure and requirements for an appeal to the board of any contest concerning the election of any officer or member of any executive committee. No appeal from the action of Smith in casting his vote for McLaughlin as chairman, as indicated in the registered letter of September 13, 1960, has been taken by Foster as provided in the foregoing rules and regulations and, after the adjournment of the meeting of September 17, the two proceedings in mandamus, the further prosecution of which the petitioners here seek to prohibit, were instituted in the Circuit Court of Braxton County on September 20, 1960.

The principal question involved in the mandamus proceedings is whether McLaughlin or Foster is the

duly elected chairman of the Democratic Executive Committee of Braxton County. Foster contends that as he is mentioned as chairman in the letter from Smith of August 25, 1960, and as there is no such office as co-chairman of the county executive committee, he was, by that letter, appointed chairman of the committee; that such action by Smith was final and irrevocable; and that the subsequent action of Smith in attempting to appoint McLaughlin as chairman was invalid and of no force and effect. On the contrary McLaughlin contends that the unregistered letter of August 25, 1960, which he insists he never received, was not an attempt to appoint Foster chairman but was instead an ineffective attempt to appoint him and Foster co-chairmen, an office which does not exist in the Democratic party organization; that the attempted action of Smith by the letter of August 25, 1960, in appointing co-chairmen, is explained and clarified by his telegram and letter of September 1, 1960; and that McLaughlin was duly appointed chairman of the executive committee by the registered letter from Smith of September 13, 1960.

In support of their applications for writs of prohibition in these original proceedings the petitioners assert that in the absence of statute courts do not exercise jurisdiction to interfere or control matters purely political pertaining to the management and proceedings of a political party until the remedies provided by the rules and regulations of such party have been invoked and exhausted, which unquestionably have not been done before the petitions in the mandamus proceedings were filed and that, for that reason, the Circuit Court of Randolph County, even if the mandamus proceedings have been properly transferred to that court, is without jurisdiction in mandamus to hear and determine the political matters involved in those proceedings.

Though not directly presented by the petitioners, a threshold jurisdictional question is disclosed by the pleadings, concerning the institution of the mandamus proceedings, their transfer to the Circuit Court of

Randolph County, and the sufficiency of the process to bring the defendants before the circuit court of that county. As this question is a jurisdictional question it will be considered and determined by this Court on its own motion. If those proceedings have not in law been instituted or, if instituted and pending, they have not been legally transferred, or the process is not sufficient to bring the defendants in those proceedings before that court, it necessarily follows that it is without jurisdiction of the subject matter and the parties; and the question of the jurisdiction of that court, in a proceeding in mandamus to hear and determine the purely political matters involved pertaining to the management and proceedings of a political party, need not be determined.

Rule 3 of the West Virginia Rules of Civil Precedure, effective July 1, 1960, provides that a civil action is commenced by filing a complaint with the court and the issuance of a summons or the entry of an order of publication. By Rule 81(a)(5), however, the rules of civil procedure do not apply to proceedings under writs of mandamus, prohibition, certiorari, habeas corpus, quo warranto and upon information in the nature of quo warranto. In consequence the statutory requirements for the institution of an action at law or a suit in equity and the statutory provisions governing the procedure in a mandamus proceeding in existence prior to the adoption of the Rules of Civil Procedure, apply to and govern a proceeding of that nature.

Section 4, Article 3, Chapter 56, Code, 1931, provides that "The process to commence a suit shall be a writ commanding the officer to whom it is directed to summon the defendant to answer the bill or action. It shall be issued on the order of the plaintiff, his attorney or agent, and shall not, after it is issued, be altered, nor any blank therein filled up, except by the clerk."

Section 5, of the same article and chapter, contains these provisions: "Process from any court, whether original, mense or final, may be directed to the sheriff

of any county. Any process shall be returnable, within ninety days after its date, except as provided in section six, article two of this chapter, to the court on any day of a term, or in the clerk's office to the first day of any rules, designated as the first or last Monday, as the case may be, in any month and year, except that a summons for a witness shall be returnable on whatever day his attendance is desired, and an order of attachment may be returnable to the next term of the court, although more than ninety days from the date of the order, and process awarded in court may be returnable as the court may direct.''

Section 11, of the same article and chapter, provides, in part, that ''Process or notice to commence actions or suits, including writs of scire facias, mandamus, quo warranto, certiorari, prohibition, and alias or other process where the original is returned not executed, may be served by any credible person;* * *.''

The foregoing three sections formerly constituted a part of Sections 2 and 5, Chapter 124, Code, 1923. Before the amendment of those two sections by the Code of 1931, the provisions of the foregoing sections, relating to process in civil actions, have been held to be mandatory where applicable, *Lee v. Smith,* 54 W. Va. 89, 46 S. E. 352; to be applicable to suits in equity and actions at law, *Tennant's Heirs v. Fretts,* 67 W. Va. 569, 68 S. E. 387, 140 Am. St. Rep. 979, 29 L.R.A., N.S., 625; and to be general in their operation and application to any action, suit or proceeding in which a summons or process issued from a court, unless some legal provision excludes it from operation in a special class of cases, *Spragins v. West Virginia Central and Pittsburg Railroad Company,* 35 W. Va. 139, 13 S. E. 45; *Wheeling Gas Company v. Wheeling,* 7 W. Va. 22.

The commencement of a suit or an action dates from the issuance of process. *The Citizens National Bank of Philippi v. Auvil,* 109 W. Va. 753, 156 S. E. 111; *Wildasin v. Long,* 74 W. Va. 583, 82 S. E. 205; *Oil and Gas Well Supply Company v. Gartlan and Ahner,* 58 W. Va. 267, 52 S. E. 524; *Swiger v. Swiger,* 58 W. Va.

764

119, 52 S. E. 23; *Armentrout v. Smith,* 56 W. Va. 356, 49 S. E. 377; *Honesdale Shoe Company v. Montgomery,* 56 W. Va. 397, 49 S. E. 434; *Ferrell v. Ferrell,* 53 W. Va. 515, 44 S. E. 187; *Lawrence v. Winifrede Coal Company,* 48 W. Va. 139, 35 S. E. 925; *United States Blowpipe Company v. Spencer,* 46 W. Va. 590, 33 S. E. 342; *Abney v. Ohio Lumber and Mining Company,* 45 W. Va. 446, 32 S. E. 256; Hogg's Pleading and Forms, Fourth Edition, Chapter 1, Section 1; 1 Am. Jur., Actions, Section 58. The date of the process is not conclusive, but is prima facie evidence of the date of its issuance and of the commencement of the proceeding. *The Geiser Manufacturing Company v. Chewning,* 52 W. Va. 523, 44 S. E. 193; *Lambert v. Ensign Manufacturing Company,* 42 W. Va. 813, 26 S. E. 431; 1 Am. Jur., Actions, Section 58. A summons commencing a proceeding, even though defective or void, operates to bring into existence the proceeding in which it is issued. *Ketterman v. Dry Fork Railroad Company,* 48 W. Va. 606, 37 S. E. 683; Hogg's Pleading and Forms, Fourth Edition, Chapter 1, Section 15. See also *McClung v. Tieche,* 126 W. Va. 575, 29 S. E. 2d 250; *Keener v. Reynolds Transportation Company,* 134 W. Va. 712, 61 S. E. 2d 629; *Ryan v. Piney Coal and Coke Company,* 69 W. Va. 692, 73 S. E. 330. As the Rules of Civil Procedure do not apply to a proceeding in mandamus, the commencement of a proceeding in mandamus dates from the issuance of process. The date of the process is not conclusive but is prima facie evidence of the date of the issuance and of the commencement of such proceeding.

A proceeding is deemed to be pending from the time it is commenced until its final determination. 1 Am. Jur., Actions, Section 64.

The procedure in a mandamus proceeding is governed by the provisions of Article 1, Chapter 53, Code, 1931, as amended by Chapter 26, Acts of the Legislature, Regular Session, 1933. Section 2 of that article and chapter provides that "Jurisdiction of writs of mandamus and prohibition, (except cases

whereof cognizance has been taken by the supreme court of appeals or a judge thereof in vacation) shall be in the circuit court of the county in which the record or proceeding is to which the writ relates. A rule to show cause as hereinafter provided for may be issued by a judge of a circuit court or of the supreme court of appeals in vacation. A writ peremptory may be awarded by a circuit court or a judge thereof in vacation, or by the supreme court of appeals in term.'' Sections 3 and 4, of the same article and chapter, provide that application for a writ of mandamus or a writ of prohibition shall be on verified petition which shall state plainly and concisely the grounds of the application and conclude with a prayer for the writ. Section 5 of the same article and chapter provides that ''The court or judge to whom the petition in mandamus or prohibition is presented shall, if the petition makes a prima facie case, issue a rule against the defendant to show cause why the writ prayed for should not be awarded. A copy of the petition shall accompany service of the rule. Such rule shall be returnable at a time to be fixed by the court or judge.'' Section 6 of the same article and chapter provides that ''If the defendant appear and make defense, such defense may be by demurrer, or answer on oath, to the petition, or both, such answer to be subject to demurrer by the petitioner or relator. Reply may be made when proper. The court or judge may permit amendments as in other cases.''

The foregoing statute enacted in 1933 dispensed with the alternative writ and provided instead for a rule to show cause and permits defense to be made by demurrer to the petition. The rule to show cause, provided for by the statute, however, performs the same function as process in the proceeding as that formerly performed by the alternative writ, which before the enactment of the statute served the dual purpose of the process and the declaration in a proceeding in mandamus. *State ex rel. Mount Hope Coal Company v. White Oak Railway Company*, 65 W. Va. 15, 64 S. E. 630, 28 L.R.A., N.S., 1013; *Town of Mason v. Ohio River Railroad Company*, 51 W. Va. 183, 41 S. E. 418.

At common law the alternative writ is not only a process but is also a pleading and it stands in the place of a declaration or complaint in an ordinary action at law. It is the first or basic pleading in the proceeding and the petition becomes *functus officio* and is in law a mere memorandum or affidavit supplying the materials for the recitals of fact in the alternative writ. 55 C.J.S., Mandamus, Section 260b. Except where abolished by statute, an alternative writ in mandamus issues on the petition or application of the petitioner and the alternative writ is not merely a writ but is also a pleading. 35 Am. Jur., Mandamus, Section 348. The alternative writ in mandamus combines the double functions of process and pleading in the same cause to the extent that it serves to bring the defendant into court and to apprise him of the grounds of action against him. High's Extraordinary Legal Remedies, Third Edition, Section 530, pp. 493, 494. The petition is generally heard by the court ex parte, and if a prima facie case appears, a rule to show cause why the writ should not issue, or an alternative writ will be granted in order that the matter may be fully considered and determined when all interests are represented before the court; and when the court grants a rule to show cause or an alternative writ the proceeding is commenced and is pending in court. Merrill on Mandamus, Sections 247 and 250, pp. 313, 314, 315.

The procedure followed in this jurisdiction in a proceeding in mandamus, prior to the enactment of the statute of 1933, is outlined in detail in point 1 of the syllabus in the early case of *Fisher v. The City of Charleston,* 17 W. Va. 595. In point 3 of the syllabus of that case this Court held that the petition constituted no part of the pleadings in a proceeding in mandamus. This holding was adhered to in *State ex rel. Phillips v. Heatherly,* 102 W. Va. 116, 134 S. E. 594, and in *State ex rel. Bowyer v. City of Spencer,* 103 W. Va. 695, 138 S. E. 312. It has also been held that the alternative writ was treated as the declaration of the petitioner. *State ex rel. Bowyer v. City of Spencer,* 103 W. Va. 695, 138

S. E. 312. After the enactment of the statute of 1933 this Court has held in effect that as, by the statute, the defendant may make defense to the petition by demurrer or sworn answer, or both, the petition is a pleading in a proceeding in mandamus. *Weaver v. The Board of Education of the County of Calhoun,* 128 W. Va. 42, 35 S. E. 2d 679.

When the rule to show cause was issued upon the petition in each of the proceedings in mandamus in the Circuit Court of Braxton County those proceedings were commenced and as pending proceedings in that court were subject to transfer by the judge of that court to the Circuit Court of Randolph County under Section 2, Article 9, Chapter 56, Code, 1931, as amended, by reason of the disqualification of the judge of the Circuit Court of Braxton County to decide or preside at the hearing of those proceedings; and by the order entered September 20, 1960, those proceedings were transferred to the Circuit Court of Randolph County and are now pending in that court. The rule to show cause issued in each proceeding, however, which constitutes the process and was returnable before the Circuit Court of Randolph County, was void, because so returnable, and was not sufficient to bring the defendants in each proceeding before the Circuit Court of Randolph County.

The provision of Section 5, Article 1, Chapter 53, Code, 1931, as amended, that the rule shall be returnable at a time to be fixed by the court or judge, by necessary implication, means that such rule shall be returnable before the court or judge from which it was issued and not returnable before the court or judge of any other county. In *State ex rel. Howerton v. Tate,* 66 N. C. 431, the Supreme Court of North Carolina held that the clerk of the superior court of one county could not issue a summons returnable in a superior court of another county. See also *Moore v. The North Carolina Railroad Company,* 67 N. C. 209. Because the rule in each proceeding did not operate to bring the defendants before the Circuit Court of

Randolph County, that court does not have jurisdiction of the defendants in those proceedings. The issuance and the service of process in the manner prescribed by statute, unless waived, are essential to the jurisdiction of the trial court to entertain a proceeding in mandamus. *Town of Camden on Gauley ex rel. Mollohan v. O'Brien,* 138 W. Va. 787, 79 S. E. 2d 74. Jurisdiction, which is the inherent power of a court to decide a case, consists of two elements, one of which is jurisdiction of the subject matter and the other of which is jurisdiction of the person. *West Virginia Secondary School Activities Commission v. Wagner,* 143 W. Va. 508, 102 S. E. 2d 901, and the many cases cited in the opinion in that case. To enable the court to hear and determine an action, suit or other proceeding it must have jurisdiction of the subject matter and jurisdiction of the parties; both are necessary and the absence of either is fatal to its jurisdiction. A court which has jurisdiction of the subject matter in litigation exceeds its legitimate powers when it undertakes to hear and determine a proceeding without jurisdiction of the parties. *West Virginia Secondary School Activities Commission v. Wagner,* 143 W. Va. 508, 102 S. E. 2d 901; *Morris v. Calhoun,* 119 W. Va. 603, 195 S. E. 341. The writ of prohibition lies as a matter of right when the inferior court does not have jurisdiction of the subject matter in controversy or, having such jurisdiction, exceeds its legitimate powers. *West Virginia Secondary School Activities Commission v. Wagner,* 143 W. Va. 508, 102 S. E. 2d 901, and the many cases cited in the opinion in that case. For these reasons the writs of prohibition, as prayed for, will be awarded in these original proceedings.

If the Circuit Court of Braxton County had made the rule in each proceeding in mandamus returnable before that court and, after proper service of the rule, on or after the return day of the rule, had transferred the proceedings to the Circuit Court of Randolph County the subject matter and the defendants in each proceeding would have been regularly before that court. Or

if the rule in each proceeding had been made returnable before the Circuit Court of Braxton County, after proper service of the rule, the proceedings and the parties would have been pending in that court and could have been heard and determined by any other circuit judge who by arrangement of the regular judge of the circuit court of that county would hold such court as provided by Section 9, Article 2, Chapter 51, Code, 1931; or such proceedings could have been heard and determined by a special judge selected in the manner provided by Section 10, Article 2, Chapter 51, Code, 1931.

To avoid any confusion or misunderstanding concerning the future course of the controversy between the parties, it is pertinent to observe that even if the subject matter and the defendants in the mandamus proceedings were properly before the Circuit Court of Randolph County, the members of this Court, other than Judge Given who entertains a contrary view, are of the opinion that the Circuit Court of Randolph County would be without jurisdiction to hear and determine the proceedings in mandamus. The questions involved in those proceedings relate to the management and the proceedings of a political party which are not regulated by statute but are governed by the Rules and Regulations for the government of the Democratic Party in West Virginia, and which have not been settled by the regularly constituted committees or other tribunals of the party. It is clear that the remedies provided by such rules and regulations have not been invoked or exhausted by the petitioners in the proceedings in mandamus. In the absence of a statute conferring jurisdiction, courts will not undertake to settle and determine substantial controversies between rival political committees or factions of such committees, the right in which is dependent upon party rules, usage and customs, and will not grant relief to either of such committees or factions, as the representative of the party, in those cases in which the party is entitled to relief, but will refuse such relief until the controversy is settled and determined by some supervising board,

committee or other tribunal of such political party. *State ex rel. Smith v. County Court of Kanawha County,* 78 W. Va. 168, 88 S. E. 662, 20 A.L.R. 1030. See *State ex rel. Savage v. Robertson,* 124 W. Va. 667, 23 S. E. 2d 281; *State ex rel. Downey v. Emmert,* 102 W. Va. 192, 135 S. E. 11; *Republican Executive Committee v. County Court of Wetzel County,* 68 W. Va. 113, 69 S. E. 522; *Boggess v. Buxton,* 67 W. Va. 679, 69 S. E. 367, 21 Ann. Cas. 289; *Kump v. McDonald,* 64 W. Va. 323, 61 S. E. 909. See also *Bailey v. Coleman,* 123 W. Va. 510, 16 S. E. 2d 918, 137 A.L.R. 308.

The writs as prayed for are awarded.

*Writs awarded.*

GIVEN, JUDGE, dissenting:

The pertinent provisions of Code, 56-9-1, 2, as amended, authorize the transfer of any "action, suit, motion or other civil proceeding", then pending in any circuit court, "to any other circuit court", where the trial judge "is so situated as to render it improper, in his opinion, for him to decide such case or preside at the trial thereof." The court may, in such a proceeding, in such circumstances, "without motion or notice", order the case to be removed to "any other circuit court". Section 3 of the same article provides that on removal "the case shall be proceeded in, heard and determined by the court to which it is removed, as if it had been brought, and the previous proceedings had, in such court".

Code, 56-1-1, provides that "(g) If a judge of a circuit be interested in a case which, but for such interest, would be proper for the jurisdiction of his court, the action or suit may be brought in any county in an adjoining circuit." Code, 56-3-5, provides that "Process from any court, whether original, mesne or final, may be directed to the sheriff of any county". Code, 51-2-8, relating to the duty of a judge interested in the result of any litigation, specifically provides that "* * * nothing herein contained shall disqualify a judge who

comes within the provisions of this section to enter a formal order designed merely to advance the cause towards a final hearing and not requiring judicial action involving the merits of the case''.

These several statutory provisions, all seemingly pertinent to the right or procedure of transferring the mandamus proceedings from the Circuit Court of Braxton County to the Circuit Court of Randolph County, lead me to the very definite conclusion that the mandamus proceedings were properly commenced, and effectively transferred by the order entered by the Circuit Court of Braxton County. The majority, as I understand, concedes that the actions were properly instituted and properly transferred, that is, ''were commenced and as pending proceedings in that court and were subject to transfer by the judge of that court to the Circuit Court of Randolph County''. No reason is even suggested as to the insufficiency of the order of the Circuit Court of Braxton County to effect such transfer. At most, we can only surmise that the proceedings, though properly ''commenced'' and properly transferred, were somehow abated or dismissed by void process. The authorities cited, however, *Ketterman v. Dry Fork Railroad Company,* 48 W. Va. 606, 37 S. E. 683, and others, clearly show that the issuance of process, though void, ''operates to bring into existence the proceeding in which it is issued''. Any other rule would preclude any effective application of our statute, Code, 56-3-21, relating to the issuance of alias or other process. See *Dunaway v. Lord,* 114 W. Va. 671, 173 S. E. 568.

Of course, no one contends that the Circuit Court of Randolph County, or any other court, has power to enter a final judgment without proper service of process, or its equivalent, on the defendants. But no lack of such service of the rule issued, or any circumstance or fact of record which would deny the right of the Circuit Court of Randolph County to issue alias or pluries process, is disclosed by the record. It seems clear to me, therefore, that the proceedings in mandamus were not

only properly "commenced", but were properly transferred and are now pending in the court to which transferred, and that that court should not be prohibited from taking cognizance thereof. Each case should be permitted to be "proceeded in, heard and determined by the court to which it is removed, as if it had been brought, and the previous proceedings had, in such court".

In the instant case, the mandamus proceedings having been properly "commenced", and having been transferred to the Circuit Court of Randolph County pursuant to applicable statutes, were certainly pending therein, and unquestionably give that court jurisdiction of "the subject matter in controversy", and there is most certainly nothing in the record in the instant case to indicate that that court has taken any action which "exceeds its legitimate powers". It is not even attempted to be established that it even became necessary for the Circuit Court of Randolph County to cause to be issued "alias or other proper process".

As to the controlling issue, the majority relies only on *State ex rel. Howerton v. Tate,* 66 N. C. 431, decided about 1872, cited in a later case, *Moore v. The North Carolina Railroad Company,* 67 N. C. 209. The only holding in the *Howerton* case, however, was: "Since the passage of the Act of 1870-'71, chap. 42, the Clerk of the Supreme Court of one county, cannot issue a summons returnable in the Superior Court of another." The holding itself shows that it was based wholly on a statute of that state, not on any supposed ancient rule. To ignore our own pertinent statutes and to follow such a rule is, in my opinion, an attempt to follow a useless obscure technicality, in the face of, and in spite of, an adequate efficient statutory procedure. There is no reason that I can imagine why the order entered by the Circuit Court of Braxton County, directing the return of the process, was not "designed merely to advance the cause towards a final hearing". Such an order is specifically authorized by the statute quoted above. Why a useless procedure of making the process

returnable before that court which was disqualified to hear the matters, thereby necessitating inconvenience and delay, or the dismissal of the proceedings then properly ''commenced'', and the institution of new proceedings in Randolph County under a different statute?

Notwithstanding the majority holds that the Circuit Court of Randolph County has no jurisdiction to determine the questions of fact presented by the mandamus proceedings, the controlling issues of fact being in dispute, as pointed out by the majority, the majority goes further as to the ''future course of the controversy'', and observes ''that even if the subject matter and the defendants in the mandamus proceedings were properly before the Circuit Court of Randolph County'', that court ''would be without jurisdiction to hear and determine the proceedings in mandamus'', thus, in my opinion, determining questions of fact not presented to or decided by, or, in fact, not pleaded or developed before any court, and thereby precluding the parties from litigating the controversy. Though such statements may be dicta, as has been suggested, to me they are more, at least a clear warning that further attempt to litigate the matters of controversy, admitted by the majority never to have been brought before a court having jurisdiction, is absolutely useless. What right has any court to decide that members of a political party executive committee, a body having statutory status and powers, have not complied with rules, laws or duties, without affording such members a chance to develop, in a court having jurisdiction, the actual facts controlling such issues? To me such procedure is not merely abstruse; it is a denial of due process, a denial of the right to litigate an existing controversy, a controversy not only of importance to litigants, but also to the whole people, for the proper functioning of the election machinery is of prime importance to the people of the whole state.

Being of the views indicated, I respectfully dissent.